ERNEST H. WADE, Respondent, v. WILLIAM BARR DRY GOODS COMPANY, Appellant.

St. Louis Court of Appeals.   Argued and Submitted May 6, 1915.
Opinion Filed June 8, 1915.

MASTER AND SERVANT: Discharge of Servant: Acceptance of Gifts: Question for Jury. In an action by a buyer for a department store, who claimed that he had been wrongfully discharged before the end of his contract term, for salary for the balance of the term, defended on the ground that he had accepted gifts and gratuities from a firm with whom he, from time to time, negotiated purchases on behalf of the store, the evidence tended to prove that such gifts, all of which were given at Christmas, came to plaintiff unexpectedly and without solicitation, and were more or less business or social courtesies arising out of the social relations between plaintiff and his wife and the officers of the firm, that they were of insignificant value as compared with the amount of the purchases from the firm, that plaintiff's orders practically confined him to buying from that firm, and that defendant's general manager was so well satisfied with plaintiff's success in his purchases that he made plaintiff a present of substantial value. *Held*, that it was a question for the jury whether the receipt of such gifts had a tendency to corrupt plaintiff and turn him from the loyalty he owed to his employer, and that the gifts did not, as a matter of law, have that tendency, especially as defendant made an issue of fact as to such question, by alleging in its answer that the acceptance of the presents without defendant's knowledge was sufficient to justify an employer, acting reasonably, to lose the confidence required and contemplated by the nature of the relation, and constituted a breach of the contract of employment.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel D. Fisher*, Judge.

AFFIRMED.

*Nagel & Kirby* for appellant.

(1) The standard of conduct required of an agent exercising discretionary powers in dealing with persons opposed in interest to his employer, is that he shall not voluntarily place himself in a position where he will be tempted not to do his best for the protection of the interests confided to him. The basis of this rule is not the effect of the particular act of the agent, but the tendency of acts of that character to impair the free exercise of his discretionary powers for the sole benefit of his principal. Eunau v. Rieger, 105 Mo. 549; Mechem on Agency (2 Ed.), sec. 1189; Robertson v. Chapman, 152 U. S. 673. (2) An agent entrusted with discretionary powers, who accepts gratuities of substantial pecuniary value from parties with whom he regularly deals in the exercise of those powers, without the knowledge or consent of his principal, has voluntarily placed himself in such a position, and has justified the termination of the confidential relation existing between himself and his principal.

*David Goldsmith* and *M. N. Sale* for respondent.

(1) Both of the contentions now made by the appellant were urged upon the former appeal of this case. It was contended by the present appellant upon that appeal both that the defendant was entitled to a peremptory instruction in its favor, and that it is ground for the discharge of a servant that he has voluntarily placed himself in a position where he will be tempted not to do his best for the protection of the interest confided to him. The evidence now adduced is no stronger (indeed, it is weaker) in favor of the appellant than it was on the former appeal. Not a single incident has been shown at the last trial which was not established

at the first trial. Under the circumstances the opinion of this court on the former appeal is *res adjudicata* upon both of the present contentions of the appellant. Barrie v. Transit Co., 119 Mo. App. 38; Rigsby v. Supply Co., 130 Mo. App. 128; Tansey v. Railroad, 186 Mo. 269. (2) As instances in which courts have refused to sustain the right of the master, as a matter of law, to discharge the servant, under conditions in which the master would have been warranted in losing confidance in the servant, and also under conditions in which the servant might mave been subjected to temptation, we refer to the following: Child v. Mfg. Co., 175 Mass. 493; Brownell v. Erich, 43 App. Div., N. Y. Sup. Ct. 369; Carpenter Steel Co. v. Norcross, 204 Fed. 537.

REYNOLDS, P. J.—Action for damages for breach of contract of employment.

Alleging in his petition the contract of employment of plaintiff by defendant for a term of one year to end January 1, 1909, performance by plaintiff and discharge without just cause before the end of the term, plaintiff demands judgment for damages sustained.

In its answer, upon which the case was tried, defendant admits the employment of plaintiff as buyer; denies that plaintiff duly performed his duties under the contract; admits he was discharged on July 11, 1908, but denies he was so discharged without just cause. Averring that, beginning with the year 1903, plaintiff had continuously been in the employ of defendant as buyer, and that the contract sued on was a renewal of prior contracts, it is averred that it was the duty and within the power of plaintiff under his employment, to represent and act for defendant in purchasing, at the terms and in the manner most advantageous to the defendant, goods, such as toys and the like, required for his department, and that the amount and character of goods to be purchased, the selecting of the dealers from whom they should be purchased,

and the protection of the interests of defendant in all matters relating to the purchase of goods for that department was under his employment, confided and entrusted to the discretion and determination of plaintiff, and averring that the nature of his employment required that defendant should entertain entire confidence that plaintiff would exercise the discretionary powers and duties so confided to him, uninfluenced by any considerations except the best interest of his employer, it is charged that during his employment plaintiff from time to time received and accepted, without the knowledge or consent of defendant, "gifts and gratuities of substantial value from Hamburger & Company, with whom plaintiff was from time to time negotiating purchases on behalf of defendant; that the acceptance and receipt of said presents and gratuities by plaintiff without defendant's knowledge or consent, tended to impair the free exercise for defendant's benefit of the discretionary powers so confided and entrusted to plaintiff, was destructive and in violation of the confidence and trust reposed in plaintiff by defendant under said employment; was sufficient to justify a reasonable person occupying the position of defendant as plaintiff's employer, acting reasonably, to lose the confidence required and contemplated by the nature of the relation between them, and constituted a breach of the contract of employment by the plaintiff.

A general denial of the new matter pleaded was filed in reply.

The case was tried to the court and a jury and from a verdict and judgment for plaintiff, defendant has appealed.

This is the second appeal by defendant. See Wade v. Wm. Barr Dry Goods Co., 155 Mo. App. 405, 134 S. W. 1084, for statement and opinion on the former appeal.

The facts in evidence at this second trial follow very closely on the lines of the first trial, with some

additional evidence at this second trial.   As in the first trial it appeared that the presents made to plaintiff and his wife by persons connected with Hamburger & Company were Christmas presents; that they consisted of a box of cigars and jewelry, running in value from $2.50 to $20.   Two of the gifts, a necklace for his wife, value not above $20, and pair of sleeve buttons for himself, worth about $15, followed plaintiff's acts in assist-ing a buyer for Hamburger & Company, who was in St. Louis and fell into some trouble.   Plaintiff took care of him and furnished him money with which to go home. The presents came the following Christmas.

Plaintiff admitted that after he had ceased buying from Hamburger & Company he received no more presents from them, but explained that Hamburger & Company had gone out of business, Mr. Hamburger and his wife going to Europe, sending him and his wife Christmas cards from there.

In this latter trial it was in evidence that plaintiff's purchases of the lines of goods in which Hamburger & Company dealt, including toys, averaged from fifty to sixty thousand dollars a year.   The smallest purchase from Hamburger & Company in any one year that plaintiff was in the employ of defendant was something less than $6000 for toys, but the general average for toys had been from ten to twelve thousand dollars a year.   It was also in evidence at this latter trial that one Allen, the general manager for defendant, presented plaintiff, shortly after Christmas of 1907, which was the time when he had been presented with cuff buttons, and his wife with a necklace by the Hamburgers, with a tailor-made suit of clothes because the season's sale of toys by defendant that year, and which plaintiff had purchased for defendant from the Hamburger Company, had far exceeded the expectations of defendant.   In this as in the former trial the evidence conflicted as to whether plaintiff had paid excessive prices for the toys included in his last purchase.

To meet the claim of defendant that plaintiff failed in his duty to defendant in that he had not called on another firm before his purchase from Hamburger & Company, at this trial plaintiff introduced evidence tending to show that Borgfeldt & Company and Hamburger & Company were the principal dealers in New York in toys and knickknacks of the quality and line required by defendant in its store; that while there was another large dealer in toys there named Illfelder, that concern did not sell to department stores such as that of defendant; that it had been the constant practice of defendant to purchase substantially all of its toys from Hamburger & Company, not only during the whole time plaintiff was in defendant's employ but for many years prior to that employment. It was also in evidence that when plaintiff first went to New York to purchase goods for defendant, Mr. William Barr, who was at that time the head of the defendant concern, had told him that he wished him to be careful in the character of toys he bought for their business and that he did not wish him to buy any from the Illfelder concern, "because they don't have the character of toys in keeping with our business; their goods are for a cheaper line of retail business."

At this last trial plaintiff asked no instructions except one as to the measure of damages which is not criticised.

Defendant asked an instruction that plaintiff was not entitled to recover, which the court refused.

It also asked two other instructions, which the court refused, defendant excepting. We do not set these out here as counsel for appellant, in their assignment of error, have given the substance of them.

At the instance of defendant the court instructed the jury to the effect that if they believed from the evidence that plaintiff was in the employ of defendant as buyer from April, 1903, until July, 1908, and if they believed from the evidence "that it was a part of his

duty as such buyer to represent and act for defendant in making purchases from time to time of the requirements of the toy department of defendant's business, and to exercise his judgment and discretion for the benefit of his employer in dealing with those from whom such purchases were made; that while so employed as such buyer, plaintiff, without the knowledge or consent of defendant, accepted and received from Hamburger & Company, with whom he had negotiated and was about to negotiate purchases in behalf of his employer, gifts or presents of substantial value; and if you believe that the receipt and acceptance by plaintiff of such gifts under the facts and circumstances shown in evidence would be sufficient to justify a reasonable person occupying the position of defendant as plaintiff's employer, and acting reasonably, to lose confidence that plaintiff would exercise the discretionary powers and duties so confided to him, uninfluenced by any considerations except the best interests of the employer, then the acceptance and receipt of such presents constituted a breach by the plaintiff of his contract of employment, and your verdict will be for defendant; and unless you so find for the defendant your verdict will be for the plaintiff.''

Beyond the usual instruction as to the number of jurors necessary to concur in a verdict, these are all the instructions asked or given.

The assignments of error are, first, that the court erred in refusing to give the peremptory instruction requested by defendant that upon all the evidence plaintiff was not entitled to recover; second, that the court erred in refusing to instruct the jury as requested by defendant that if plaintiff, by accepting presents from Hamburger & Company voluntarily placed himself in a position where he would be tempted not to do his best in protecting the interests of his employer, such conduct was in violation of the confidence reposed in him and justified his discharge.

The first assignment, involving the action of the trial court in overruling the demurrer to the evidence, is untenable unless we are to hold, as a matter of law, and on the theory advanced by learned counsel for appellant in their second assignment, that plaintiff, respondent here, could not and should not recover.

This brings us to a consideration of this second assignment, which counsel in their argument here put thus: "Can an agent, entrusted with discretionary power in the purchasing of goods for his principal's account, accept, without his principal's knowledge and consent, presents or gratuities of substantial value consistently with the confidence reposed in him?" Answering this in the negative, it is argued by those counsel that upon the admitted facts plaintiff was not entitled to recover.

An examination of the brief of counsel for plaintiff, as it appears in the report of the case on the former appeal (p. 406), shows that this last proposition is practically the same which was urged by those counsel on that appeal, and is sought to be supported by practically the same authorities then cited by them.

In the opinion in that case we said (l. c. 408), after noting that the evidence tended to prove that the presents in question came to plaintiff unexpectedly and without solicitation and were more or less business or social courtesies arising out of the social relations of plaintiff and his wife and the officers of Hamburger & Company, reciprocated by plaintiff and his wife: "The evidence on behalf of the plaintiff further tended to prove that neither the friendly social relations mentioned, nor the presents received by him, in the slightest degree influenced him in his capacity as a buyer or caused him to buy from Hamburger & Company, or to give them any advantage in price or otherwise or to falter in unswerving loyalty to his employer and devotion to its interests."

At this last trial evidence of like character was again given, fortified, as we have stated, by additional evidence, some of it showing the very insignificant value of the presents as compared with the amount of the purchases, all given at Christmas; other of it showing that plaintiff had been directed by Mr. Barr not to purchase of a particular firm—which firm excluded, practically confined him to Hamburger & Company; and other to the effect that Allen, the manager of defendant firm, was so well satisfied with the success of plaintiff in his purchases that he made him a present of substantial value.

Taking up the proposition of counsel, we are not prepared to hold with defendant, as a matter of law, that the mere receipt by plaintiff of these gifts, establishes his breach of trust and was not open to explanation. Admit the fiduciary character of the trust reposed by the employment; admit the receipt of the gifts, it would seem that to warrant the discharge of an employee it should appear that the gifts were made for the purpose of influencing the employee in respect of matters within the scope of his functions (1 Labatt's Master & Servant (2 Ed.), sub. div. C, sec. 279, pp. 852 and 853), leaving out of consideration all question as to whether they had in fact influenced him. Mr. Labatt cites no cases under this paragraph, but refers to chapter 1897, Laws of Pennsylvania, which impose a penalty upon designated officers of mines who receive or solicit money from employees for the purpose of continuing them in the employment or procuring employment for them. Two sections of the Laws of Rhode Island of 1905 (now sections 21 and 22, p. 1287, Compiled Laws of 1909), are also quoted. These make it a misdemeanor for any agent in public or private employ or public office to "corruptly accept, or obtain or agree to accept, or attempt to obtain from any person, for himself or for any other person, any gift," etc., "for doing or forbearing to do," etc., any act in rela-

tion to the business of his principal or employer. Necessarily, under either the Pennsylvania or Rhode Island law a corrupt motive would be of the essence of the offense. But it seems to us that the controlling thought in this observation of the text-writer, namely, that the gift was "offered for the purpose of influencing him (the employee) in respect of matters within the scope of his functions," is a correct statement of the law, as far as it goes.

Counsel for appellant invoke the rule applied to trustees, as illustrated in Keech v. Sandford, 1 White & Tudor's Lead. Cases in Equity, part 1, p. *58, commonly called the Rumford Market case, a case wherein the doctrine of constructive trusts was applied—a case in equity in which it was held that a trustee could not derive personal benefit from his trusteeship. The principle underlying the decision in this case has been applied in every case of like character that has been before the courts of chancery, the rule being so rigidly applied that the trustee is not allowed to show good motives or that no damage to his *cestui qui trust* results from his act. But we are to remember that while much is said in these cases upon the duty of fidelity and loyalty on the part of the agent or trustee, that the courts were themselves passing upon the facts. We are referred to no case in which it has been held that the rule is to be applied without consideration of all the facts in the case. It is true that Mr. Mechem (1 Mechem on Agency (2 Ed.), secs. 1188 to 1191) states the rule as to faithfullness of a trustee or agent very strongly and refers to the trustees as agents, but his cited cases are, almost without exception, cases in equity; in none of them are the facts present as here.

In the case at bar the crucial point is, were certain gifts made to the agent by reason of his agency and made to influence him on the line of his agency, and would reasonable men, passing on the acceptance of these gifts, say that the giving and receipt of them

had a tendency to corrupt plaintiff and turn him from the loyalty he owed his employer? That latter was a question of fact for the determination of the jury. That was the very issue tendered by the answer, which averred that the acceptance of the presents by plaintiff, without the knowledge of defendant, "was sufficient to justify a reasonable person occupying the position of defendant as plaintiff's employer, acting reasonably, to lose the confidence required and contemplated by the nature of the relation between them, and constituted a breach of the contract of employment." Defendant itself made this issue, made it an issue of fact.

The jury had the evidence of the whole transaction before them, the amount of the gifts, the amount of the dealings of plaintiff with those from whom he purchased for defendant, as well as the times when and circumstances under which they were given. They were all given at Yuletide; were Christmas gifts; given at the time when all the world is full of charity and goodwill; when, as we are told, even soldiers in opposing trenches and in deadly struggle, stop and make gifts. Who would say that in such acts these soldiers were disloyal to their cause. All the facts being present, as here, the issue tendered as here, in an action at law, as here, it was for the jury to say whether, on these facts, they, "as reasonable men," "acting reasonably," would say the gifts were "substantial gifts" and were bribes; whether under color of gifts at such a time and of such character, a corrupt, a corrupting motive lay back of their giving or receipt. We decline to here say, as a matter of law, that on the evidence, the receipt of such gifts, under like circumstances, are to be conclusively held to be acts justifying the discharge of the agent. In brief, we hold that on its facts and issues made, this was a case for the jury. In that view we see no reason to change our holding on this point as set out in the former opinion in this case.

· Discovering no error to the manifest prejudice of the defendant in this last trial, the judgment of the circuit court is affirmed. *Nortoni* and *Allen, JJ.*, concur.