## DAVID E. MARTIN et al., Plaintiffs in Error, v. RAY COUNTY COAL COMPANY.

### Division One, June 6, 1921.

1. **PETITION: Cause of Action: General Demurrer.** In the face of a general demurrer charging that the petition does not state a cause of action, all facts properly pleaded, and all inferences of fact that may fairly and reasonably be drawn therefrom, must be taken as true.

2. ———: ———: **Contract of Sale: Elements: Breach and Damages: General Demurrer.** Allegations in the petition stating the following elements of a contract for the sale of coal sued on, to-wit: (a) the parties (plaintiffs and defendant); (b) the subject-matter (100 to 300 tons of coal per day); (c) the quantity (the entire output of defendant's mines, not exceeding 300 tons per day); (d) the price ($1.80 per ton); (e) the place of delivery (the usual place); (f) the time of delivery (daily from May 1, 1916, to July 31, 1918); (g) a partial performance of the contract (that from May 1st until November 20, 1916, defendant kept and performed all the terms and conditions of the contract, by delivering to plaintiffs the entire output of its mines, and received from plaintiffs the price agreed to be paid therefor); (h) a breach of said contract (that after November 20, 1916, defendant wholly failed and refused to deliver to plaintiffs said coal or any part thereof); and (i) the resultant damages to plaintiffs in a named sum, are neither vague nor indeterminate, and in the face

288 Mo.—16

of a general demurrer to the petition must be taken as true, and embrace all the essential elements of a valid contract of sale.

3. ————: ————: Consideration: Mutuality of Obligation: Part Performance. Allegations in the petition that plaintiffs agreed "to purchase of defendant a minimum of one hundred tons or a maximum of three hundred tons of bituminous coal per day, at and for the agreed price of $1.80 per ton;" that thereafter defendant executed and delivered to plaintiffs a written memorandum confirming the said agreement and that defendant "thereby bound itself to sell and did sell and deliver unto plaintiffs said coal according to the stipulations and to the effect as hereinbefore alleged;" that thereafter plaintiffs "with the consent of defendant elected to take under and by virtue of said contract the maximum quantity of coal mentioned therein," and that from May until November, 1916, defendant delivered to the plaintiffs "the entire output of its said mines, and received therefor from plaintiffs the price agreed to be paid for said coal," state mutual and reciprocal promises, and a contract that is not lacking in either consideration or mutuality. And even though the contract so pleaded may lack in mutuality, the part performance thereof, as alleged, made it binding on both parties.

4. ————: ————: Defense of Statute of Frauds: How Raised. The defense that the contract pleaded does not comply with the Statute of Frauds cannot be raised by demurrer, but to be available must be specially pleaded in the answer, and if not so pleaded will be waived. So that where plaintiffs' petition alleged that they orally agreed with defendant to purchase from it coal upon certain stated terms and that "thereafter, as evidence of and in confirmation and ratification of said contract and oral agreement, defendant, through the agent then in charge of and managing its business, made, executed and delivered unto plaintiffs its written memorandum of agreement whereby said oral contract and agreement was in all things confirmed and said defendant thereby bound itself to sell and did sell and deliver unto plaintiffs said coal according to the stipulations and to effect as hereinbefore alleged," the defense that the contract alleged did not comply with the Statute of Frauds cannot be raised by demurrer.

Appeal from Chariton Circuit Court.—*Hon. Fred Lamb, Judge.*

REVERSED AND REMANDED (*with directions*).

*Perry S. Rader* and *Ed. E. Yates* for plaintiffs in error.

(1)   Upon the sustaining of a demurrer to a first amended petition a cause cannot be dismissed out of court; and whether or not plaintiffs' first amended petition stated a cause of action, the court erred in rendering final judgment against plaintiffs, as it did by adjudging that "the same be dismissed" and "that the defendant go hence without day and recover of the plaintiffs its costs herein expended." Secs. 1803, 1824, 1825, 1826, R. S. 1909; Comstock v. Davis, 51 Mo. 569; Wells v. Moore, 49 Mo. 229; Bennett v. Bank, 61 Mo. App. 297; Gordon v. Burris, 125 Mo. 39. (2)   The judgment in this case is a final judgment. It concludes with the words: "Wherefore it is by the court ordered and adjudged that plaintiff take nothing by his petition herein; that the same be dismissed; that the defendant go hence without day and recover of the plaintiff its costs herein expended." Those are apt words for a final judgment. Rogers v. Gosnell, 51 Mo. 466; Bowie v. Kansas City, 51 Mo. 459; Moody v. Deutsch, 85 Mo. 244; O'Connor v. Koch, 56 Mo. 262; Flanagan v. Hutchinson, 47 Mo. 237; Johnson v. United Rys., 227 Mo. 430-434. It is universally held that a judgment adjudging that "the defendant go hence without day" is a final judgment. Boggess v. Cox, 48 Mo. 279; Lisle v. Rhea, 9 Mo. 172; Jones v. Hoppie, 9 Mo. 175; Moran v. Plankington, 53 Mo. 243; Palmer v. Crane, 8 Mo. 622; Lyons & Reesman v. Rollinson, 109 Mo. App. 70-72. The circuit court had no authority under Secs. 1803, 1824 and 1825, R. S. 1909, to render a final judgment on the demurrer to the first amended petition, but it did nevertheless render a final judgment and discharged defendant out of court. (3) A demurrer is not the way to obtain the benefit of the Statute of Frauds. A contract being alleged in the petition, the Statute of Frauds is available as a defense only upon the filing of an answer. Phillips v. Harden-

burg, 181 Mo. 472; Devore v. Devore, 138 Mo. 185; Mugan v. Wheeler, 241 Mo. 381; Martin v. Harrington, 174 Mo. App. 708; Moormeister v. Hannibal, 163 S. W. 928; Graff v. Foster, 67 Mo. 521; Maybee v. Moore, 90 Mo. 340; Gardner v. Armstrong, 31 Mo. 539; Mo. Real Estate Synd. v. Sims, 179 Mo. 685; Hurt v. Ford, 142 Mo. 300; Mathews v. Wallace, 104 Mo. App. 98. Since the petition in this case specifically alleges that defendant made, executed and delivered to plaintiffs its written contract, a demurrer is not the proper method to test the sufficiency of said contract. (4)  The demurrer must distinctly specify the grounds of objection to the petition. Sec. 1801, R. S. 1909; McClurg v. Phillips, 49 Mo. 316; Hanson v. Neal, 215 Mo. 277; Zeideman v. Molasky, 118 Mo. App. 122. The only part of the demurrer that attempts to specify defendant's objections to the amended petition is its second paragraph.  The first specification in that paragraph is that the contract is not in writing, which is a statement flatly contradicted by the petition itself, which specifically alleges that the contract sued on was reduced to writing. The second objection is not distinctly specified.  The objection is that the memorandum of the contract was not "signed by the defendant party to be charged, or by any other person lawfully authorized by defendant."  There is a two-fold answer to that.  The first is found in the petition itself, which alleges that "the defendant, Ray County Coal Company, through the agents then in charge of and managing their business, executed and delivered to plaintiffs its written memorandum of agreement," and that made an issue of fact, which can be met only by an answer. If the objection means that "F. H. Werhies, Secy. & Treas. Ray County Coal Co.," did not have authority to enter into said contract with plaintiff, it raises a question of fact, which can be established or refuted only by evidence, and answered by a jury.  (5)  When a petition is attacked by a general demurrer, all the facts well pleaded and all the inferences of fact that may be

fairly and reasonably drawn from the facts alleged, must be taken as true. If facts essential to a recovery are pleaded, however inartificially or defectively, a general demurrer thereto will not lie. Am. Brewing Co.' v. St. Louis, 187 Mo. 381; Rodgers v. Fire Ins. Co., 186 Mo. 255; Newton v. Newton, 162 Mo. 182, 187; Ball v. City of Neosho, 109 Mo. App. 688. That part of defendant's demurrer charging that "the petition does not state sufficient facts to constitute a cause of action against the Ray County Coal Company" was a general demurrer. Am. Brewing Co. v. St. Louis, 187 Mo. 375. (6) Where the plaintiff pleads a contract the law presumes its validity, and presumes that it is in writing if the law requires it to be written, and presumes that it is such a contract as the law requires; and if defendant objects to it as void by reason of non-compliance with the Statute of Frauds, he must make the defense in his answer. Maybee v. Moore, 90 Mo. 343; Hallock v. Brier, 80 Mo. App. 336; Phillips v. Hardenburg, 181 Mo. 473; Mugan v. Wheeler, 241 Mo. 381; Martin v. Harrington, 174 Mo. App. 708; Sharkey v. McDermott, 91 Mo. 652; Cape Girardeau & Chester Railroad v. Wingerter, 124 Mo. App. 430.

*George W. Crowley* and *Lavelock & Kirkpatrick* for defendant in error.

(1) Where it is evident, from the face of the petition, that the requirements of the Statute of Frauds have not been complied with, this statute may be effectually invoked by a demurrer. 9 Ency. Plead. & Prac. pp. 708, 709; Chambers v. Lecompte, 9 Mo. 577; Gardner v. Armstrong, 31 Mo. 540. (2) One of the grounds of demurrer, is that "the petition does not state facts sufficient to constitute a cause of action against the Ray County Coal Company." Under the rulings in this State, this is sufficient. Bank v. Haden, 35 Mo. 362; Bank v. Young's Admr., 35 Mo. 372; Morgan v. Bouse, 53 Mo. 221; Jordan v. Railroad, 61 Mo. 54; State v. Weeks, 77 Mo. 498; Wil-

son v. Polk Co., 112 Mo. 134; Hallock v. Brier, 80 Mo. App. 336; Underwood Typewriter Co. v. Realty Co., 118 Mo. App. 207. (3) The court dismissed plaintiffs' alleged cause of action, because plaintiffs voluntarily refused to avail themselves of the privileges allowed them under the statute and the law of this State. The dismissal amounted to a nonsuit. Meddis v. Wilson, 175 Mo. 132; Dean v. Railroad, 148 Mo. App. 449; Manning v. Ins. Co., 176 Mo. App. 684; Mason v. Railroad, 226 Mo. 212; Rubber Co. v. Wernicke, 166 Mo. App. 128. (4) The dismissal or nonsuit entered herein, was, in legal effect, by reason of plaintiffs' voluntary refusal to exercise the rights accorded them under the law, a voluntary dismissal. Plaintiffs should have, by an entry made of record, elected to stand on the second petition, or put into effect the rights granted them under the statute, and by declining to do this, they defaulted and confessed that their cause of action should be dismissed. Plaintiffs voluntarily forced the court to either make the entry it did make, or leave the whole matter undetermined, until it suited the convenience of plaintiffs to act herein. The dismissal was the result of the voluntary acts of plaintiffs, from which neither an appeal nor writ of error should be prosecuted. Louisiana Co. v. Mitchell, 20 Mo. 433; Gentry Co. v. Black & Stout, 32 Mo. 543; Kirby v. Bruns, 45 Mo. 236; Poe v. Dominic, 46 Mo. 113; Layton v. Riney, 33 Mo. 88; Koger v. Hayes Admr., 57 Mo. 330; Greene County Bank v. Gray, 146 Mo. 571; State v. Lubke, 15 Mo. App. 166; Schneider v. Kirkpatrick, 72 Mo. App. 106. (5) The alleged oral agreement commencing on the 1st day of May, 1916, and ending on the 31st day of July, 1918, was vague, indefinite, uncertain, without mutuality or consideration invalid and unenforcible. Sec. 2783, R. S. 1909; Jones v. Durgin, 16 Mo. App. 370; Campbell v. Handle Co., 117 Mo. App. 19; Reigart v. Coal & Coke Co., 217 Mo. 142; Hudson v. Browning, 264 Mo. 58; White Oak Coal Co. v. Ed. E. Squier Co., 219 S. W. 697. (6) The fact, if it be a fact,

as it is alleged, that defendant, during the months of May, June, July, August, September and October and a part of November, 1916, delivered to plaintiffs the entire output of it mines, and that during that time plaintiffs paid therefor, did not validate or make binding the unexecuted part of said alleged contract.  Campbell v. Handle Co., 117 Mo. App. 23;  Jones v. Durgin, 16 Mo. App. 374; Hudson v. Browning, 264 Mo. 67;  Bolt & Nut Mfg. Co. v. St. Louis Car Co., 216 Mo. 733.  (7)  The alleged oral agreement in plaintiffs' first amended petition, is of no binding force or effect on defendant.  The defendant was not bound or obligated to mine, furnish or deliver to plaintiffs, coal in any quantity whatever.  The alleged contract is without mutuality or consideration, and is therefore void.  Hudson v. Browning, 264 Mo. 58;  Reigart v. Coal & Coke Co., 217 Mo. 142;  Campbell v. Handle Co., 117 Mo. App. 19;  Jones v. Durgin, 16 Mo. App. 375; Coal Co. v. Ed. E. Squier Co., 219 S. W. 697.  (8)  Suppose that plaintiffs agreed to purchase of defendant, and defendant agreed to sell and deliver to plaintiffs the entire output of its mines, at a fixed price, there being no agreement requiring defendant to operate its mines, or any agreement as to what the output should be, and that thereafter the contract was partly executed; is not such a contract, as to the unexecuted portion thereof, unenforcible for uncertainty?  Brown Paper Box Co. v. Mercantile Co., 190 Mo. App. 584.  (9)  That part of Sec. 2784, R. S. 1909, which says "unless the buyer shall accept a part of the goods so sold and actually receive the same" is not controlling in this case, nor does it apply to the facts herein.  Reigart v. Coal & Coke Co., 217 Mo. 165.

ELDER, J.—This is an action for damages for alleged breach of contract, brought by plaintiffs, who are partners engaged in the business of mining, buying and selling coal, against the defendant company, which is the owner and operator of certain coal mines located near Richmond, Ray County, Missouri.

The suit was begun on October 7, 1918, by petition filed in the Circuit Court for Ray County. Summons was issued and returned executed on October 8, 1918. On October 21, 1918, defendant filed a demurrer to the petition. On October 22, 1918, upon application of plaintiffs, a change of venue was granted to Chariton County. On February 6, 1919, by agreement the cause was continued by the Circuit Court for Chariton County to April 12, 1919. On April 12, 1919, by agreement of the parties the cause was further continued to April 15, 1919. On April 15, 1919, the court sustained defendant's demurrer and dismissed the petition, neither plaintiffs nor their counsel being then present. On May 28, 1919, counsel for defendants acknowledged notice, given by counsel for plaintiffs, that on June 2, 1919, plaintiffs would present a motion to set aside and modify the order sustaining the demurrer and for leave to file an amended petition. Such motion was filed, but no action was taken thereon until June 9, 1919, when the motion was sustained by the court, the judgment of dismissal was set aside and leave was granted plaintiffs to file an amended petition. On the same day, viz., June 9, 1919, plaintiffs filed their first amended petition. Said amended petition, formal parts omitted, with the exhibit referred to therein, is as follows:

"Plaintiffs for their cause of action against defendant say that on or about May 1st, 1916, they orally agreed with the defendant corporation, Ray County Coal Company, acting by and through its manager and selling agent then having charge of its business, to purchase of said corporation a minimum of one hundred tons or a maximum of three hundred tons of bituminous coal per day, to be delivered to plaintiffs at the usual place of delivery, same being the product of the mines of said Ray County Coal Company, at and for the agreed price of one dollar and eighty cents per ton, to be paid therefor by plaintiffs to defendant Coal Company, with the further agreement and understanding that said contract and agreement between said parties should remain and be

effective and in full force for a term ending the 31st day of July, 1918.

"That thereafter on said 1st day of May, 1916, as evidence of and in confirmation and ratification of said contract and oral agreement so set out hereinbefore, said defendant, Ray County Coal Company, through the agents then in charge of and managing their business, made executed and delivered unto plaintiffs its written memorandum of agreement whereby said oral contract and agreement was in all things confirmed and said defendant thereby bound itself to sell and did sell and deliver unto plaintiffs said coal according to the stipulations and to the effect as hereinbefore alleged. A copy of said memorandum and agreement is hereto attached, marked 'Exhibit A,' and made a part hereof.

"That thereafter plaintiffs with the consent of defendant elected to take under and by virtue of said contract the maximum quantity of coal mentioned therein, the same being the entire output of defendant's said mines, not to exceed the said maximum quantity, to-wit, 300 tons of coal per day.

"That following said contract and in accordance with its terms defendant Coal Company, during the months of May, June, July, August, September, October and until the 20th day of November, 1916, kept and performed in all things the terms and conditions of its said agreement and delivered unto plaintiffs at the usual place where same should have been delivered under the aforesaid contract as it was bound to do the entire output of its said mines, the same being in amount and tonnage as hereinafter stated, and received therefor from plaintiffs the price agreed to be paid for said coal.

"That on the 7th day of October, 1916, because of the increased wage scale which said defendant Coal Company was thereafter compelled to pay its miners, the price to be paid by plaintiffs to said defendant for its output of coal, as aforesaid, was voluntarily advanced to

one dollar and eighty-six cents per ton, for and during the remaining term of said contract.

"That defendant, Ray County Coal Company, at all times hereinbefore mentioned and prior to the making of its agreement with plaintiffs on May 1st, 1916, well knew that plaintiffs had contracted and sold to the Atchison, Topeka & Santa Fe Railway Company a large quantity of coal, to-wit: an amount equal to or in excess of the entire output of defendant Coal Company's mines so purchased by plaintiffs as aforesaid; which contract and sale of coal to said Railway Company by plaintiffs was made in reliance upon and in faith of plaintiffs in the contract obligation of defendant, Ray County Coal Company, to deliver unto plaintiffs said 300 tons of coal per day, being the maximum output of their said mines, as, when, where and at the price and according to all the terms of the contract and agreements hereinbefore recited. That in order to fulfill its contract obligation with said Railway Company plaintiffs were ever after November 20, 1916, compelled to and did furnish and deliver unto said Railway Company coal in amount equal to the output of the mines of said Richmond Coal Company, which said coal so furnished unto said Railway Company by plaintiffs was mined by plaintiffs from their own mines at Richmond, Missouri, as plaintiffs then and there were bound to do, and was of a value far in excess of the price mentioned in the contract and agreement made and entered into between plaintiffs and said defendant Coal Company, by reason whereof plaintiffs have been greatly damaged.

"Plaintiffs further state that from the time of the breach of the contract so made between plaintiffs and defendant Ray County Coal Company as aforesaid, to-wit, on November 20, 1916, until the expiration of said contract, to-wit, July 31, 1918, the average monthly output of defendant's mines heretofore mentioned has been five thousand and five hundred (5500) tons of coal per month, which said coal and all of it plaintiffs were bound to deliver to defendant at the price of $1.80 per ton, according to the contract and agreement heretofore recited.

"That defendant, Ray County Coal Company, has wholly failed and refused to deliver unto plaintiffs said coal, or any part thereof, as it was lawfully bound to do; that said coal was of the reasonable cash market value at the time and place, when and where same should have been delivered unto plaintiffs, of the following sums, that is to say, during the month of December, 1916, three dollars and seventy-five cents ($3.75) per ton; January, 1917, three dollars and fifty cents ($3.50) per ton" (Here follows varying recited values for each month from February, 1917, to March 1918, both inclusive, the lowest being $2.07 per ton and the highest $4 per ton); "that the total value of said coal as aforesaid, which plaintiffs were entitled to have and receive from defendant, Ray County Coal Company, during the period aforesaid, according to the terms and conditions of the aforesaid contract and agreement, less the sum which plaintiffs were obligated by their contract to pay for the same, was one hundred five thousand, five hundred and forty-five ($105,545) dollars, in which sum plaintiffs have been damaged by reason of the failure and refusal of defendant, Ray County Coal Company, to keep and perform the terms of its contract so made with plaintiffs as aforesaid.

"Wherefore plaintiffs say that by reason of the premises they have been damaged in the total sum of one hundred and five thousand, five hundred and forty-five ($105,545) dollars, with interest at six per centum per annum, and for costs."

"EXHIBIT 'A'

"Ray County Coal Co.

"Mines Located Richmond, Mo.

"Kansas City, Missouri.

May 1, 1916.

"Martin & Hubbell,

"Kansas City, Missouri.

"Gentlemen:

"Confirming the conversation wherein we entered into a stipulated agreement, whereby the Ray County Coal

Company is to furnish you from one hundred to three hundred tons per day, for the purpose of fulfilling railroad contracts entered into.

"It is agreed that this coal shall net the Ray Co. Coal Company $1.80 per ton, from this date until the contract ends, which will be July 31, 1918.

"Respectfully,

"F. H. WERRIES,

"Secy. & Treas. Ray County Coal Co."

Immediately, on the same day, defendant filed a demurrer to the amended petition, which is as follows:

"Now on this day comes the Ray County Coal Company defendant in the above entitled cause, and demurs to the amended petition of plaintiffs herein, for the reason that the petition does not state facts sufficient to constitute a cause of action against the Ray County Coal Company.

"Defendant further demurs to the amended petition of plaintiffs for the reason that the alleged contract set forth in the petition of plaintiffs was a contract not to be performed within one year from the making thereof, and that said contract was oral and not in writing, nor was there any memorandum or note thereof in writing signed by the defendant, party to be charged, or by any other person lawfully authorized by defendant."

Thereafter, but still on June 9, 1919, the court made an order dismissing plaintiff's petition as follows:

"Now on this June 9th, 1919, this cause comes on for consideration upon the demurrer heretofore filed by the defendant. Comes the defendant by its counsel, Geo. W. Crowley and Lavelock & Kirkpatrick; the plaintiff though thrice solemnly called comes not but makes default, and the court after hearing the presentation of said demurrer by defendant's counsel is of the opinion and finds that said demurrer is well taken; that the facts and matters set forth in plaintiff's petition do not constitute a cause of action in favor of plaintiffs and against the defendant.

"Wherefore, it is by the court ordered and adjudged that plaintiff take nothing by virtue of his petition herein; that the same be dismissed; that the defendant go hence without day and recover of the plaintiffs its costs herein expended."

From the judgment thus rendered against them, plaintiffs have sued out a writ of error from this court.

1. Plaintiffs assign as error the ruling of the circuit court that their amended petition did not state a cause of action and the sustaining by the court of defendant's demurrer to the said petition. The gist of Cause of the argument of learned counsel for defendant Action. in support of the action of the court is that the petition shows upon its face that the contract sued on is an oral agreement, for a period of more than two years, with no signed written memorandum thereof, and therefore in violation of the Statute of Frauds (Sec. 2783, R. S. 1909), a question which it is contended may be raised by demurrer; and that the contract is invalid for the reason that it is "vague, indefinite, uncertain, and without mutuality or consideration." In opposition to this insistence plaintiffs argue in substance that the petition states facts constituting a valid contract under the Statute of Frauds, and that if defendant desired to urge the statute as a defense it could only do so by answer, and not by demurrer.

Directing our attention first to the sufficiency of the petition as stating a cause of action, we start with the unquestioned premise that under a general demurrer, such as is set forth in the first paragraph of the demurrer here, all facts properly pleaded in the petition, and all inferences of fact that may fairly and reasonably be drawn therefrom, must be taken as true. [American Brewing Co. v. St. Louis, 187 Mo. 367; Rodgers v. Insurance Co., 186 Mo. 1. c. 255; Troll v. Third National Bank, 211 S .W. 545.] Referring to the amended petition before us we find alleged therein the following elements of the contract, to-wit: The parties (plaintiffs and de-

fendant herein); the subject matter (100 to 300 tons of coal); the quantity (the entire output of defendant's mines, not exceeding 300 tons per day); the price ($1.80 per ton); the place of delivery (the usual place of delivery); the time of delivery (daily from May 1, 1916 to July 31, 1918); a partial performance of the contract (that from May until November 20, 1916, defendant kept and performed all the terms and conditions of the contract, delivered to plaintiffs the entire output of its mines, and received from plaintiffs the price agreed to be paid therefor); a breach of the contract (that after November 20, 1916, defendant wholly failed and refused to deliver to plaintiffs said coal or any part thereof); and the resultant damage to plaintiffs in the sum of $105,545. All of these elements seem well pleaded, none of the statements with respect thereto are vague or indeterminate and, as said *supra*, all such statements must be taken as true. Irrespective then of the questions of consideration and mutuality and of the contract being in compliance with the statute of frauds, we are accordingly of the opinion that the terms of the agreement as pleaded are definite and certain and embrace all the essentials of a valid contract of sale.

*Elements of Contract.*

Passing next to the questions of consideration and mutuality of obligation, we perceive that the amended petition recites that plaintiffs agreed "to purchase of said corporation (defendant) a minimum of one hundred tons or a maximum of three hundred tons of bituminous coal per day . . . at and for the agreed price of one dollar and eighty cents ($1.80) per ton;" that thereafter defendant executed and delivered to plaintiffs a written memorandum confirming the said agreement and that defendant "thereby bound itself to sell and did sell and deliver unto plaintiffs said coal according to the stipulations and to the effect as hereinbefore alleged;" that thereafter plaintiffs "with the consent of defendant elected to take under and by virtue of said contract the maximum quantity of

*Consideration: Mutuality.*

coal mentioned therein''; and that from May until November 20, 1916, defendant delivered to plaintiffs ''the entire output of its said mines . . . and received therefor from plaintiffs the price agreed to be paid for said coal.'' Construing these averments, there is present an agreement on the part of plaintiffs to purchase a fixed quantity of coal at a stated and definite price. On the part of defendant there is a promise or agreement to sell and deliver the said coal, followed by an actual delivery of part thereof and receipt of payment therefor. Upon defendant rested the obligation to sell and deliver and correlatively upon plaintiffs was imposed the duty to buy and make payment. The promises were mutual and reciprocal. By the weight of relevant authority the contract pleaded was not lacking in either consideration or mutuality. [Loudenback Fertilizer Co. v. Tennessee Phosphate Co., 121 Fed. 298; Grand Prairie Gravel Co. v. Wills Co., 188 S. W. 680; Rozier v. St. Louis & S. F. R. Co., 126 S. W. 532; Lima Locomotive Co. v. Steel Castings Co., 155 Fed. 77; Silver Mining Co. v. Smelting & Ref. Co., 16 Colo. 118; Ramey Lumber Co. v. Schroeder Lumber Co., 237 Fed. 39; Warren v. Coal Co., 200 Mo. App. 442; Baker v. Railway Co., 91 Mo. l. c. 157; Klein v. Johnson, 191 Mo. App. 453; Moss v. Green, 41 Mo. 390; Scriba v. Neely, 130 Mo. App. 258; Green v. Whaley, 271 Mo. l. c. 654; 13 Corpus Juris, 339, sec. 191.] And even though it may have been lacking in mutuality (which is contrary to our belief), part performance thereof, as is alleged, made it binding on both parties.

Part Performance.

[Louisville & Nashville Ry. Co. v. Coyle, 123 Ky. 854; Rozier v. St. Louis & S. F. R. Co., 126 S. W. (Mo. App.) l. c. 534; Herrick v. Wardwell, 58 Ohio St. 294.]

The questions of general sufficiency and of consideration and mutuality of the contract being disposed of, we proceed to the final inquiry as to the availability of the Statute of Frauds as a defense, when presented by

Statute of
Frauds.

way of a special demurrer, as set forth in the second paragraph of defendant's demurrer herein. It is true, as is argued by counsel for defendant, that the amended petition initially declares upon an oral agreement, which is not to be fully performed within more than two years from the date thereof. It is equally true, as contended by plaintiffs, that the petition later recites that "As evidence of and in confirmation and ratification of said contract and oral agreement so set out hereinbefore, said defendant, Ray County Coal Company, through the agents then in charge of and managing their business, made, executed and delivered unto plaintiffs its written memorandum of agreement whereby said oral contract and agreement was in all things confirmed," a copy of said memorandum being attached to the petition. But whether this further allegation and memorandum shows a sufficient compliance with the Statute of Frauds, it is unnecessary for us to determine, for the reason that the primary question, to be first answered, is whether defendant can raise the question by demurrer. It may be conceded as well settled that the defense of the statute must be specially pleaded or it will be waived. [Gardner v. Armstrong, 31 Mo. 535; Rabsuhl v. Lack, 35 Mo. 316; Gordon v. Madden, 82 Mo. 193; Maybee v. Moore, 90 Mo. 340; Graff v. Foster, 67 Mo. 512.] But the function of a demurrer is limited. While, generally speaking, its office is to sweep away a defective pleading, by raising issues of law upon the facts stated, nevertheless, when a plaintiff has stated a contract (as here) the law presumes its validity, and if the defendant objects to it as being void for non-compliance with the Statute of Frauds, he must make that defense in his answer. It is not incumbent on the plaintiff to affirmatively show in his petition that the contract is without the Statute of Frauds. That it is within the statute is a matter of defense. [Mathews v. Wallace, 104 Mo. App. 96.] Thus in Sherwood v. Saxton, 63 Mo. 78, where a demurrer attacked a petition

because it was not averred "that any note or memorandum" of a sale of land by a trustee under a deed of trust "was made in writing," WAGNER, J., said, at page 84: "There is no merit in the point made in the demurrer in reference to the Statute of Frauds. When a plaintiff states a cause of action the law presumes its validity, and if it is objected that it is void by reason of there not being any writing to the transaction, that is a matter *that must be set up in the answer as a defense.*" (Italics ours). And so in Phillips v. Hardenburg, 181 Mo. 463, an appeal from a judgment sustaining a demurrer to plaintiff's petition, GANTT, J., said, l. c. 473: "The petition alleged an agreement and if it was necessary that it should be in writing the presumption is that it was a valid one, and it was for the defendant to deny the agreement and insist on proof that it was in writing, or admit the agreement and plead the Statute of Frauds as a defense, *but it is clear that a demurrer is not the way to obtain the benefit of the Statute of Frauds.*" (Italics ours). Again in Martin v. Harrington, 174 Mo. App. l. c. 708, and Maybee v. Moore, 90 Mo. 340, has the rule been laid down that the statute must be taken advantage of by answer. The early case of Chambers v. Lecompte, 9 Mo. 575, relied upon by defendant, is distinguishable from the instant case for the reason that there it appeared upon the face of the bill of complaint that the contract was *entirely verbal,* it being *expressly* so alleged (l. c. 579), while here the petition avers that the oral agreement entered into was thereafter, on the same day, *confirmed by a written memorandum,* executed and delivered by defendant to plaintiffs, a copy thereof being filed with the petition.

II. Without passing upon the question as to whether or not plaintiffs' amended petition shows that the contract relied on is without the Statute of Frauds, we are clearly of the opinion, and so hold, that the petition otherwise stated a cause of action. That being true,

defendant's demurrer was not sustainable as to the first

**Final Judgment.** paragraph thereof. And, entertaining the view that the defense of the Statute of Frauds could not be invoked by demurrer, we hold that the demurrer should not have been sustained as to the second paragraph thereof. In view of such ruling it is unnecessary for us to determine the remaining point urged by plaintiffs, that the court erred in rendering final judgment against them on defendant's demurrer.

For the reasons appearing herein, we therefore order that the judgment of the circuit court be reversed, that the cause be remanded with directions to the trial court to set aside the judgment rendered, to reinstate the cause upon its docket, and to overrule the demurrer of defendant *in toto*. All concur.