## CAMPBELL, Respondent, v. AMERICAN HANDLE COMPANY, Appellant.

**St. Louis Court of Appeals, February 27, 1906.**

CONTRACTS: Mutuality: Want of Consideration. An agreement to cut and deliver timber of certain dimensions at certain times, which did not specify how much timber was to be delivered or how much ground was to be cut over, was void for want of mutuality so far as it was executory and an action did not lie for its breach.

Appeal from Pemiscot Circuit Court.—*Hon. Henry C. Riley,* Judge.

REVERSED.

*Farris & Oliver* for appellant.

(1) The court erred in refusing to sustain the demurrer to the evidence. The plaintiff had failed to make out any case against the defendant. Even upon his own testimony (and he was the only witness for plaintiff who undertook to say what the contract was), he had made no contract with defendant enforcible at law. He refused to swear that he even obligated himself to use diligence in carrying out, on his part, the alleged contract. This contract was, as to that portion unfulfilled on October 23, 1903, void for lack of certainty and for lack of mutuality. For it is submitted that: (a) Unless both parties are bound by a contract, so that an action can be maintained by either against the other for a breach, neither will be bound. Bishop on Contracts, (Enl. Ed.), sec. 78; 7 Am. and Eng. Enc. of Law (2d Ed.), 138; Campbell v. Lambert, 36 La. Ann. 35; Railroad v. Mitchell, 38 Tex. 85; Ashcroft v. Butterworth, 136 Mass. 511; Drake v. Vorse, 52 Iowa 417; Thayer v. Burchard, 99 Mass. 508; Hoffman v. Maffioli, 104 Wis. 630; Railway

v. Dane, 43 N. Y. 240; Newlin v. Prevo, 90 Ill. App. 515; American Cotton Oil Co. v. Kirk, 15 C. C. A. 540; Cold Blast T. Co. v. Kansas City B. & N. Co., 114 Fed. 77. (b) If, in this case there was no mutuality of promise for the delivery of any definite, or ascertainable quantity of bolts or logs, then there was no contract, and a failure to continue performance, or to accept continuance of delivery, would give no right of action to the plaintiff. Crane v. Crane & Co., 105 Fed. 869; Bailey v. Austrian, 19 Minn. 535; Moulton v. Kershaw, 59 Wis. 319; Swaine v. Maryott, 28 N. J. Eq. 589. (2) It must be conceded by the respondent that unless he were bound, then the defendant could not be. If plaintiff was bound, to what and for what was he bound? A promise is not a good consideration for a promise unless there is a mutuality of engagement, so that each party has the right at once to hold the other to a positive agreement. Stiles v. McClellan, 6 Colo. 89; Townsend v. Fisher, 2 Hilt. 47; Livingstone v. Rogers, 1 Cal. 583; Tucker v. Woods, 12 Johns. 190; Keep v. Goodrich, 12 Johns. 397; Macedon & B. P. Road Co. v. Snedeker, 18 Barb. 317; Jones v. Durgin, 16 Mo. App. 373; Am. Pub. & Eng. Co. v. Walker, 87 Mo. App. 508.

*Ward & Collins* for respondent.

The appellant on this point makes the contention (a) that the contract sued upon and proved was one in which both parties were not bound; this is not true. In this case there was an obligation on the part of the respondent to cut and haul timber for a stated length of time off of certain lands, and the appellant was under obligation to furnish said timber for respondent to cut and haul and to pay him a stated price for such services, and both parties being bound, either could maintain an action against the other for a breach of said contract. Jones v. Durgin, 16 Mo. App. 373; Louis v. Ins. Co., 61 Mo. 534.

BLAND, P. J.—The petition contains two counts. The second count was abandoned at the trial. The first count alleges that the plaintiff and defendant (a corporation) on August 28, 1903, contracted with each other as follows: Plaintiff was to cut and deliver at defendant's factory in the city of Caruthersville, Missouri, ash timber of the lengths of six feet and two inches and four feet and nine inches, and none less than seven inches in diameter at the small end, at the price and sum of $4.50 per cord, and all ash suitable size for saw-stocks to be cut in lengths of twelve feet and four inches, fourteen feet, and sixteen feet, at the price and sum of $10 per thousand feet, and that by the terms of said contract, said prices were to be paid plaintiff by the defendant for all the timber that plaintiff could cut and haul off of what is known as the Cunningham land west and south of what is known as King millsite, in Pemiscot county, Missouri, from the time of making said contract until the first day of January, 1904. That the plaintiff, in order to prepare himself to perform his part of the contract, built roads and put up a boarding-house, which he furnished, all at a great expense, and laid out other sums of money for tools necessary to enable him to carry out the contract, and that he, under the contract, cut and delivered on defendant's millyard, a large quantity of both kinds of timber named in the contract and that he continued to cut and deliver the timber until October 23, 1903, when the defendant forbade and refused to let him continue to cut and deliver any more of the timber.

The answer is a general denial, a plea of payment of all sums due under the contract and the surrender of the contract by the plaintiff for a consideration.

At the close of the evidence, the defendant moved the court to declare that under the law and the evidence, the plaintiff could not recover. The court refused this request and submitted the case to a jury, who returned a verdict in favor of the plaintiff. Defendant appeals.

Defendant contends that its instruction for a non-

suit should have been given, for the reason that the evidence of both parties conclusively shows that neither party was bound by the contract; that defendant was only bound to pay for the timber actually delivered and accepted and that as it was admitted this was done, plaintiff had no cause of action to submit to the jury. Plaintiff testified as follows:

"I made a contract with them (the defendant) to deliver this timber. I made this contract with George Peattie, a member of defendant corporation. This contract was closed in front of the Wilson Hotel in Caruthersville. Agreed upon the price. I was to cut the timber down on the Cunningham land near the King millsite. I was to cut and get out ash for handle stuff, six feet two, and four feet nine, none less than seven inches at the small end. For this I was to get $4.50 per cubic cord. Later we found it heavy to handle this stuff, and I agreed with Peattie that the part that was heavy to handle and load should be cut into saw-stocks and hauled on log wagons. For that—the saw-stock—I was to have $10 per thousand, measured outside the bark. He agreed to pay that and I agreed to take it, and to deliver the timber at defendant's factory."

That nothing was said about how much timber land he was to cut over; that he understood he was to deliver the bolts and defendant was to accept all the bolts he could deliver; that Peattie said to him he would give him the contract to put in as much or as little as he wanted to put in, or all he could put in by the first of January, and that he told him he could "put in right smart and would make preparations to put in a good lot of timber;" that he was not bound by what was said between him and Peattie to put in a given number of cords or bolts or of saw-stocks. Peattie testified:

"Some time in July, Campbell asked me if we had any work for him; I told him we had some cutting and hauling out here. I offered him a price and he would not accept it, and it was in August some time before I come

to his figures, $4.50 a cubic cord and $10 per thousand for logs delivered on the yard. Some time about the 20th August he started to work; he continued till the 23rd of October. . . . . Campbell was to cut and deliver all the ash bolts and logs that he could off the Cunningham tract No. 1, adjacent to King's mill—no specified amount that he was to cut; he was to go along as fast as he could up to the first of the year if the rain did not put him out. He agreed to go ahead and get in all he could. Afterwards I asked him not to put in too much first of August, but after the 10th of September to put in all he wanted to."

We think the contract is void for want of mutuality. Plaintiff was not bound to cut and deliver any specific number of cords of bolts or any specific number of feet of saw stocks, nor was he bound to cut all the ash timber on any particular tract of land or any tract of land. The law, in respect to this class of agreements, is well stated by SANBORN, Circuit Judge, in Cold Blast Trans. Co. v. Kansas City Bolt and Nut Company, 57 L. R. A. l. c. 699; s. c., 114 Fed. 77, as follows:

"But an accepted offer to sell or deliver articles at specified prices during a limited time in such amounts or quantities as the acceptor may want or desire in his business, or without any statement of the amount or quantity, is without consideration and void, because the acceptor is not bound to want, desire or take any of the articles mentioned. . . . Accepted orders for goods under such void contracts constitute sales of the goods thus ordered at the prices named in the contracts, but they do not validate the agreements as to articles which the one refuses to purchase, or the other refuses to sell or deliver, under the void contracts, because neither party is bound to take or deliver any amount or quantity of these articles thereunder."

In Baily v. Austrain, 19 Minn. 535, it was held that "a contract to supply the proprietor of a foundry with all the pig iron wanted in his business until a certain

date specified, was not binding because it does not bind the purchaser 'to want' any quantity whatever." "Mutuality of contract means that an obligation rests upon each party to do or permit to be done something in consideration of the act or promise of the other; that is, neither party is bound unless both are bound." [7 Amer. & Eng. Ency. Law (2 Ed.), 114.]

In Crane et al. v. Crane & Co., 105 Fed. 869, it was held that "an agreement by a wholesale dealer to supply a retailer during a certain time at a stated price with so much of a commodity as the purchaser might require for his trade and which leaves it practically optional with the purchaser to increase or decrease his orders with the rise or fall of prices, as may be most to his advantage, and the corresponding disadvantage of the seller, was void for want of mutuality."

Plaintiff was not bound under the terms of the contract to furnish any specified number of cords of bolts nor any specified number of feet of saw-stocks. If he found it profitable to himself to cut and deliver all of the ash timber on the tract of land, he might do so. If, on the other hand, he found it unprofitable, he was at liberty to cease cutting and making deliveries at any time. There was therefore no mutuality of contract and the court should have so declared as a matter of law by granting defendant's instruction in the nature of a demurrer to the evidence.

The judgment is reversed. *Goode* and *Nortoni, JJ.,* concur.