MARION T. FULLINGTON, Appellant, v. OZARK POULTRY SUPPLY COMPANY.—39 S. W. (2d) 780.

Division One, June 5, 1931.

1168

*Haymes & Dickey* for appellant.

*Page, Barrett & Barrett* for respondent.

FITZSIMMONS, C.—Appellant (plaintiff) sued respondent (defendant) in the Circuit Court of Greene County to the September Term, 1927. Upon respondent's application the venue was changed to Webster County. Appellant's petition was in three counts. The second and third counts, which respondent did not contest, were for money advanced in the respective sums of $100 and $17.50.

Respondent filed a demurrer to the first count of appellant's petition upon the ground that it failed to state a cause of action. The demurrer was sustained, and appellant refusing to plead further, judgment was rendered against him upon the first count. Motions for a new trial and in arrest of judgment were overruled and appellant was granted an appeal in the Springfield Court of Appeals. The latter court transferred the cause to this court for the reason that the amount sued for in the first count was $8,100, together with interest. The first count of the petition is for damages for breach of contract of employment of appellant by respondent. The contract was in writing. It is set out at large in the petition and is as follows:

" 'THIS CONTRACT AND AGREEMENT entered into this 26th day of November, 1924, between The Ozark. Poultry Supply Company (a corporation chartered under the laws of the State of Missouri), party of the first part, and Marion T. Fullington, party of the second part,

" 'WITNESSETH:

" 'That in consideration of moneys paid into aforesaid corporation for stock in same and service to be rendered by said Marion T. Fullington, the aforesaid corporation hereby agrees to place said Marion T. Fullington in charge of all sales as General Sales Manager from and after November 26, 1924, and to pay said Marion T. Fullington fifteen per cent (15%) commission on the gross sales of all products manufactured or distributed by aforesaid corporation, their

heirs or assigns, and in addition thereto a drawing account of sixty dollars ($60) per week payable weekly in advance on and after January 1st, 1925, said sixty ($60) per week to be deducted from total commissions accruing to said Marion T. Fullington at the end of each three months' period thereafter.

" 'It is further agreed in consideration of the foregoing that said Marion T..Fullington is to devote his entire time and attention to the business of the aforesaid corporation if and when in his opinion and judgment the affairs of the aforesaid corporation require it; it is further agreed and understood that said Marion T. Fullington is to use his own judgment as to the time spent in the office and the time spent on the road.

" 'It is further agreed that said Marion T. Fullington will be made a member of the Board of Directors of the aforesaid corporation effective December 1st, 1924.

" 'It is further understood and agreed that this contract and agreement remains in full force and effect for a period of five (5) years from November 26th, 1924, and thereafter until six (6) months' advance notice has been given from either party to the other.

" 'Signed this 26th day of November, 1924.

 " 'THE OZARK POULTRY SUPPLY COMPANY,

 " 'By:
 " '(Signed) SETH T. WOODS, *President.
 " '(Signed) R. E. McBRIDE, *Sec'y-Treas.
" '(Signed) M. T. FULLINGTON, General Sales Manager.
" '(Signed) J. E. McQUADE, Witness.' "

The first count of the petition, after alleging the contract in terms, pleaded it according to its legal effect as appellant interpreted it, and alleged that appellant entered upon the discharge of his duties as General Sales Manager for respondent; that he gave his time and ability and did all things to be done and performed by him under the contract until January 1, 1926, after which date, "the appellant wholly refused to permit or allow the plaintiff to continue his services and employment under said contract and wholly breached the same, and refused longer to be bound thereby as to the employment of the plaintiff and the payment of him thereunder." Appellant further alleged that, from January 1, 1926, to the time of bringing suit on August 27, 1927, he was at all times ready, able and willing to perform the services by him agreed to be performed under the contract, but that respondent failed and refused to permit him to work thereunder. The petition also stated that appellant received payment for one week in the year 1925 at the rate of $60 per week; that the fifteen per cent commission which, by the

contract, respondent agreed to pay to appellant, amounted to only $5.42 from November 26, 1924, when the employment began, to January 1, 1925, and to a very small sum during the year 1925, and did not exceed $60 per week in 1926 and 1927. Accordingly appellant alleged in the first count of the petition that he had a cause of action against respondent in the sum of $8,100, which was for fifty-one weeks in 1925, fifty-two weeks in 1926, and thirty-two weeks in 1927, at the drawing account rate of $60 per week specified in the contract.

Respondent contends that the trial court properly sustained the demurrer to the first count of the petition because the terms of the contract give to the appellant an unlimited right to decide later the nature and extent of his performance and whether or not he would perform at all. The particular terms of the contract to which respondent refers are here repeated as follows:

" 'It is further agreed in consideration of the foregoing that said Marion T. Fullington is to devote his entire time and attention to the business of the aforesaid corporation *if and when in his opinion and judgment the affairs of the aforesaid corporation require it;* it is further agreed and understood that said Marion T. Fullington is to use his own judgment as to the time spent in the office and the time spent on the road.' " (Italics ours.)

Respondent argues that the foregoing clause of the contract of employment makes the promise of appellant to perform conditional on his own free will. It is therefore a unilateral contract, analogous to agreements to supply merchandise in which no quantity is stated. Respondent concedes that appellant might sue in *quantum meruit* for the services which he actually performed to January 1, 1926, measuring the value of his services by the contract, but that he could not sue for a breach of the entire contract.

I. If for the present we disregard and set apart the recited consideration of the purchase by appellant of stock in respondent corporation, the contract, as made by the parties by their agreement in writing, was that respondent hired appellant as its general sales manager in charge of all sales for a period of five years from November 26, 1924, and thereafter until six months advance notice of termination should be given by either party, at the rate of compensation stated, and appellant accepted the employment. Both parties also agreed that appellant was to devote his entire time and attention to the business of respondent if and when in his opinion and judgment the affairs of the corporation required it. They further agreed that appellant was to use his own judgment as to how much time he was to spend in the office of respondent and how much time on the road in the perform-

ance of his duties as general sales manager in charge of all sales. The petition discloses that appellant supplemented his agreement to serve by taking up the tasks of general sales manager on November 26, 1924, the effective date of the agreement, and performing them until his discharge on January 1, 1926. And these allegations of the petition are to be taken as true for the purposes of the demurrer.

It is obvious that a general sales manager in charge of all sales of a trading corporation is largely responsible for the success or failure of the business of his employer. He holds an office which, by its very nature, vests in him a certain measure of discretion as to how and where and when he will manage the sales. He is not like unto a factory hand who punches a time clock when he enters and leaves the shop, and who leaves much of his right of private judgment out doors when he takes his place in the assembly line of the plant.

It is elementary that contracts which depend for performance upon the wish, the will or the pleasure of one of the parties are unilateral and cannot be enforced. The authorities cited by respondent support this proposition if, indeed, support is needed. One of these authorities is 13 Corpus Juris, Section 704, page 634, where the rule is thus stated: "A promise which is made conditional on the will of the promisor is generally of no value, for one who promises to do a thing only if it pleases him to do it is not bound to perform it at all." That is as it should be. There is no accounting for the tastes of people either in everyday life or in courts of law and no tests for tastes or whims or wishes can be devised.

But a different rule of law should and does govern those functions of men to which a rule of reason can be applied. Of these there are acts which by agreements permit or require the exercise of judgment, or discretion, measured and limited by the concrete, extrinsic facts and circumstances of the particular case. These acts, predicated on the judgment of the actor, are capable of being tested by other men, applying the powers of their own minds and the lessons of human experience to the thing done and under scrutiny.

The reports abound with cases where work is to be done or goods bought to the satisfaction of the hirer or buyer. It is uniformly held in these cases that the person who is to be satisfied may accept or reject the work or the merchandise without accountability for the particular sentiment which he may express. These rules of decision have peculiar force in cases involving artistic sensibilities and exquisite tastes, in the purchase of paintings, statuary and the like. But in cases where the work to be done or the property to be bought is to be subject to the approval of a third person, that person, even though he be the attorney or agent of the hirer or buyer, must exercise his powers of judgment in good faith, without caprice, or bias

or prejudice, and subject to the scrutiny and review of courts of justice. And thus it was held, in the case of Livesley v. Johnston (Ore. Sup.), 76 Pac. 946, 65 L. R. A. 783, upon demurrer to a petition for specific performance of a contract to sell hops to plaintiff, that the contract was not void for want of mutuality because it contained a clause "leaving the quality and condition of the hops at the time of delivery to the *judgment* of the buyers." (Italics ours.) Of the privilege of exercising judgment, the Oregon Supreme Court said in this case, l. c. 788:

"Livesley and Company could not reject the hops on mere whim or sheer volition, but must in good faith exercise an honest judgment in the premises, and unless they, by themselves or through their agent, so rejected them, they would nevertheless be bound for the price. Being a party and passing judgment upon their own case, good morals and decent propriety would suggest that they act with circumspection and a considerate regard for the rights of the seller as well as their own; and the law will look with greater scrutiny upon their determinations than if they were wholly disinterested arbiters. While this condition qualifies to a certain extent the promise to accept and pay for the hops, if choice in quality and in good condition, as agreed upon, it does not, by negation, destroy the efficacy of the promise. If the sale had been the ordinary one of goods or chattels, the buyer, as we have seen, would have exercised his judgment as to rejection at his peril, and the goods or chattels could be shown, notwithstanding, to be of the quality and condition agreed upon. In a sale like the one at bar, the buyer must also accept, unless in his honest judgment, exercised in absolute good faith, the commodity is not such as was contracted for."

So, too, in the case at bar, the right which the agreement gave to Fullington to devote his entire time and attention to the business of respondent if and when the affairs of respondent required, was not an option to Fullington to work as much or as little as he pleased, or, if it pleased his fancy, to cease his labors altogether. The latitude of judgment given to and reserved by Fullington to determine how much time he should give to the company, how much he should spend in the office and how much on the road, was a power the use or abuse of which by the servant could be tested in the courts by the master in a proper case. But it was not a power which destroyed the mutuality of the contract.

In Campbell Printing Press Company v. Thorp, 36 Fed. 414, 1 L. R. S. 645, Judge Brown, later a justice of the United States Supreme Court, said: "We know of no reason of public policy which prevents parties from contracting that the decision of one or the other shall be conclusive."

Warren v. Coal Company, 200 Mo. App. 442, was a suit in equity to enjoin defendant from withholding from plaintiff certain shipments of coal under a sales agency contract. The defense was that the contract was unilateral and void for want of mutuality. The court, in overruling this, commented: "If he failed to sell or refused to try to sell, that was only a failure to comply with his contract, but had nothing to do with characterizing the *nature* of the contract." [200 Mo. App. 1. c. 445.]

A servant who is hired for a stated period can be discharged before the end of the term only for cause. [Beggs v. Fowler, 82 Mo. 599; Sugg v. Blow, 17 Mo. 359; Wade v. Wm. Barr Dry Goods Co., 191 Mo. App. 629, 177 S. W. 668; Same case, 155 Mo. App. 405, 134 S. W. 1084; O'Connor v. St. Louis American League Baseball Co., 193 Mo. App. 167, 181 S. W. 1167.] Respondent cites many cases in support of his contention. But either they deal with sales of railroad ties, milk or other products, the quantities of which the contract does not limit or determine or set any norm for such determination, or they deal with sales which leave to the buyer the power of fixation of the quantity of the article purchased by his will, his wishes or his wants. In any case they are not in point. The demurrer to the first count of the petition should have been overruled.

II. The decision reached is founded on the obligation of the parties arising out of their mutual promises to hire and to serve for the period stated in the agreement, and supplemented by actual service. Therefore it is not necessary for a decision of this case to determine whether the purchase by appellant from respondent of shares of its stock, to the amount of $3,000 as the petition recites, was a further valuable consideration supporting the contract, independent of the consideration of the mutual promises of the parties. Independent or additional consideration, such as a release of a cause of action, serve to turn into constant, steady or even lifetime employments contracts of hire which otherwise would be determinable at will by either party. [Harrington v. Kansas City Cable Railway Co., 60 Mo. App. 223.] But in the view taken, the contract in this case does not need the support of an independent valuable consideration to make it indeterminable by respondent before the time limited except for cause. If, without deciding, the recited purchase of stock is not a consideration supporting respondent's hiring of appellant, the other consideration of mutual promises is sufficient, and the considerations may be severed. Drummond Realty & Investment Company v. W. H. Thompson Trust Company (Mo. Sup.), 178 S. W. 479, quotes Parsons on Contracts (9 Ed.), star page 455, to this effect: "If one

or more of several considerations, which are recited as the ground of a promise, be only frivolous and insufficient, but not illegal, and others are good and sufficient, then undoubtedly the considerations may be severed, and those which are void disregarded, while those which are valid will sustain the promise.''

The consideration of the purchase of stock at full value for cash is by no means illegal.

For the reasons stated, the cause is reversed and the case is remanded to the trial court with directions to set aside that part of its final judgment which was upon the first count of the petition, to overrule the demurrer to the first count of the petition, and thereafter to proceed upon the first count according to law, the judgment heretofore entered to stand so far as it concerns the second and third counts and to abide whatever final judgment may be rendered upon the first count. *Cooley* and *Westhues, CC.,* concur.

PER CURIAM:—The foregoing opinion by Fitzsimmons, C., is adopted as the opinion of the court. All of the judges concur.