**John RICHARDSON, Appellant,**

v.

**Robert MORELAND, Respondent.**

**No. 53221.**

Supreme Court of Missouri, Division No. 2.

Dec. 31, 1968.

Laurence B. Silks, Silks & Silks, Kansas City, for appellant.

Forest W. Hanna, Kansas City, Sprinkle, Carter, Sprinkle, Larson & Hanna, Kansas City, of counsel, for respondent.

BARRETT, Commissioner.

In this action to recover $50,000.00 damages for personal injuries there was a unanimous verdict for the defendant and the plaintiff has appealed. The plaintiff, Richardson, age 72, was a passenger in a 1960 Pontiac automobile driven by his friend John W. Moore. The defendant-respondent, Robert Moreland, was the driver-operator of a 1955 Mack truck and trailer. The two vehicles, the Pontiac and the Mack truck and trailer, were involved in a collision on March 11, 1966, at 10th and Burlington Streets in North Kansas City. Mr. Moore and plaintiff were northbound on Burlington. The defendant Moreland was southbound on Burlington and was in the act of making a left-hand turn onto 10th Street when the front end of Moore's Pontiac collided with the tractor-trailer "toward the rear." The truck was "damaged in the tire rack, the two cross members on the trailer. It sprung the front axle of the trailer." Richardson's right of recovery and Moreland's liability were submitted upon the single hypothesis that Moreland "failed to keep a careful look-out."

Upon this appeal plaintiff has three points or assignments of error but they are all related and directed to the principal thesis that the court erred in denying his motion for a directed verdict "on liability" because the "defendant was negligent as a matter of law." In this connection plaintiff argues that defendant's evidence was not "substantial," "contrary to physical facts, impossible and incredible," had no probative force and should therefore be disregarded.

As stated, the collision in which Mr. Richardson was injured occurred as his host drove north on Burlington after having crossed the A. S. B. bridge 1275 feet from the intersection of 10th and Burlington. The collision was at 9:20 in the morning on a cloudy, rainy day and the pavement was wet. As a matter of fact the entire intersection was in process of being rebuilt, there was a barricade in the center "or the medial between Burlington southbound and the northbound lanes." An investigating police officer said "the condition of the streets would be not quite the same as normal," there was gravel and dirt around the intersection. That was the condition on March 11, 1966, and when the case was tried a year later, March 8, 1967, the intersection, lights, lanes and medials had all been changed and the witnesses had to reconstruct the physical surroundings. Mr. Richardson said that his host, Moore, was 75 feet from 10th Street when he first saw the truck and it "was just beginning to make a left-hand turn from going south turning east." The speed of the truck, according to him, was 15 miles an hour and the speed of his host was 30 miles an hour. It was his opinion that the Pontiac was but 30 feet away when he felt its brakes

and "it appeared to me that this truck wasn't going to stop." There were no obstructions to vision, Moore's was the only vehicle leaving the A. S. B. bridge and Richardson said of his own driver, "I wish that he had of turned left or right and we might have went with him and missed him. We went straight into him." And, he said, Moore gave no horn signal.

The plaintiff called Moreland as his witness and it is principally upon this fact and his testimony that plaintiff relies as establishing defendant's negligence as a matter of law. As plaintiff's witness Moreland said that he first saw the Pontiac "about a block and a half or two blocks south of me"—north on Burlington in a northbound lane "in the vicinity of the bridge." Moreland was traveling south in the east lane of Burlington "ready to start my turn when I first saw the car." There was an interruption in his testimony at this point, the plaintiff asking that he be declared a hostile witness, then referring to his prior deposition and to interrogatories for what plaintiff asserted were contradictory statements or versions of certain facts. In any event, Moreland was turning left with a green signal light, the front bumper of his tractor was seven to ten feet into 10th Street when Moore drove into his trailer. This is the testimony relied on by plaintiff:

"Q. Well, did you continue to watch this car as it came off the bridge?

"A. No, I didn't. I thought it was far enough that I had plenty of time to turn."

He said that his speed was 15 to 20 miles an hour and that as he commenced the turn the Pontiac was "a block and a half to two blocks in my judgment."

As a witness on his own behalf Moreland gave other and further details but it is not necessary to note them here. To readily reach the crux of the matter it is only necessary to note the testimony of one or two other witnesses. The police officer who arrived on the scene within minutes, in addition to pointing out the physical difficulties and changes, said that the truck "had proceeded on with the travel east in making the left-hand turn, he was down about a half a block from the 10th and Burlington intersection. The car was in the middle of the street, almost approximately in the middle of the street." This officer said that the defendant Moreland gave this statement: "I was going south on Burlington and turning left with the light or turning east with the light. I saw him, car number two (Moore), on top of the hill coming off the bridge. I got out to the middle of the east lanes and I gave the gas to get out of his way, that is when he hit me." Moore, who has a suit to recover damages for his injuries pending, did not testify in this case. But the officer said that Moore gave this statement: "While I was heading north on Burlington I was proceeding with the light and the light was green. I was about 25 feet from the intersection when the tractor turned left or turned east." An independent witness who had stopped his truck on 10th Street with the light said that he saw the truck turning left at approximately fifteen miles an hour and at the same time saw Moore's automobile from the north, on the wet pavement, at a speed of 50 miles an hour.

 It is not deemed necessary to further detail the circumstances, at best, from the plaintiff's standpoint, it may only be said that they presented a jury question of the defendant's failure to keep a lookout. Thaller v. Skinner & Kennedy Co., Mo., 315 S.W.2d 124, 129. This brief resume of the evidence may be sufficient without further ado to demonstrate the inapplicability of the plaintiff's argument. There is not present here an admission of liability by the defendant or even of circumstances from which it is even a permissible inference that the facts as testified to by defendant amount to such an admission. McCormick v. Russo, Mo., 432 S.W.2d 302; Hecker v. Schwartz, Mo., 426 S.W.2d 22. Since at best negligence in failing to keep a careful lookout was but a jury issue, the weight and credibility of the evidence to

support the verdict in favor of the defendant is not an open question in this court. Cluck v. Abe, 328 Mo. 81, 40 S.W.2d 558; Gannon v. Laclede Gas Light Co., 145 Mo. 502, 46 S.W. 968, 47 S.W. 907; Clark v. Quality Dairy Co., Mo., 400 S.W.2d 78. At best, again, the evidence on this issue was in conflict and this court, in this posture of the case, is concluded by the jury's verdict. Nichols v. Bresnahan, 357 Mo. 1126, 212 S.W.2d 570, 572. Certainly the case is not comparable to Ewen v. Spence, Mo.App., 405 S.W.2d 521, 524, when "(t)here comes a point or place when statements given by a witness, whether in the form of estimates or otherwise, are so far removed from actual possibilities that they lose the force of bona fide estimates and honest opinions and become so manifestly incredible, irreconcilable with, and contrary to physical laws and common human knowledge that they demonstrate in and of themselves that they are made without actual knowledge and are mere conjecture, or wishful thinking. They do not constitute probative evidence." While appellant cites this case, he does not wish its literal application because he urges that defendant's evidence be accepted and the consequence declared as a matter of law. The appellant also cites a list of contributory negligence cases, instances of contributory negligence as a matter of law (Roux v. Pettus, Mo. App., 293 S.W.2d 144; Payne v. Smith, Mo., 322 S.W.2d 764) but it is not necessary here to enter upon a consideration of the doctrine of contributory negligence and its rationale. See 2 Harper & James, Torts, Secs. 22.3 and 22.10 and Prosser, Torts, Sec. 64, p. 426; State ex rel. Thompson v. Shain, 349 Mo. 1075, 163 S.W.2d 967. Neither is it necessary in connection with this appeal to define "substantial evidence" (Neil v. Mayer, Mo.App., 426 S.W.2d 711, 715) or even " 'to determine as a matter of law whether there is any substantial evidence to sustain an issue of fact.' " Ducoulombier v. Thompson, 343 Mo. 991, 1001, 124 S.W.2d 1105, 1110.

■ It is sufficient here to note in passing that it is only in the rarest and clearest of instances that verdicts may be directed for plaintiffs in common law actions for damages, particularly those dependent on oral evidence. Magoffin v. Missouri Pac. R. Co., 102 Mo. 540, 15 S.W. 76 and Rogers v. Thompson, 364 Mo. 605, 265 S.W.2d 282,—it should be noted, is not a very conclusive opinion since one judge only concurred, four concurred in result and two judges dissented. And while in Wilkins v. Stuecken, 359 Mo. 1047, 225 S.W.2d 131, the court in discussing the propriety of a sole cause instruction spoke of a defendant "guilty of negligence as a matter of law," the court reversed and remanded the cause for a trial on its merits and the court did not in point of fact direct a verdict for either party. In any event, as indicated, failure to keep a lookout was at best a jury question and the plaintiff was not entitled as a matter of law to a directed verdict. "Furthermore, it was not correct to say that a failure to keep a lookout to the right constitutes negligence as a matter of law. We have just held, as plaintiff insisted, that his failure to keep a lookout to the left was not negligence as a matter of law because a driver cannot keep a lookout in all directions at once; and certainly he must not keep his lookout in one direction only. What constitutes negligence in failing to keep a lookout in any direction at any particular time or place depends on the conditions and circumstances and usually is a jury question." Slaughter v. Myers, Mo., 335 S.W.2d 50, 54. Other cases considering the general rule and rationale of courts not directing verdicts on oral evidence in common law actions for damages are Beezley v. Spiva, Mo., 313 S.W.2d 691; Holtzman v. Holtzman, Mo.App., 278 S.W. 2d 1; M. F. A. Central Cooperative v. Harrill, Mo.App., 405 S.W.2d 525, and McCormick v. Russo, supra. And, finally, quite similar in many respects on its facts and controlling here is Robbins v. Robbins, Mo., 328 S.W.2d 552. It is not necessary to quote extensively from that opinion, the court again approved of the reasoning in

Cluck v. Abe, held that negligence in failure to keep a lookout was a jury question and, in any event, that plaintiff was not entitled to a directed verdict as a matter of law.

For the reasons indicated, the judgment is affirmed.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges concur.