STATE of Missouri ex rel. STATE DEPARTMENT OF PUBLIC HEALTH AND WELFARE, DIVISION OF WELFARE, Appellant,

v.

Nancy T. LUSTER, Formerly Nancy T. O'Neal, Respondent.

No. 25376.

Kansas City Court of Appeals, Missouri.

June 1, 1970.

Summers, Senior · Counsel, Division of Welfare, Jefferson City, for appellant.

Heywood H. Davis, G. William Frick, Dietrich, Davis, Burrell, Dicus & Rowlands, Kansas City, for respondent.

MAUGHMER, Commissioner.

We have here a suit, based upon a written contract, to recover a money judgment for an alleged breach of the contract. There was a verdict and judgment for defendant. Plaintiff has appealed.

Many of the facts are not in dispute. On January 3, 1966, the defendant as Nancy T. O'Neal, nee Cox (now Nancy T. Luster by reason of a second marriage) was appointed a case worker in the Jackson County, Missouri welfare office. Mrs. O'Neal at that time was a high school graduate and had been awarded a degree in psychology by the Central Missouri State College at Warrensburg. She and her husband were employed for a time at the McCune Home for Boys in Independence, Missouri. She took a two-weeks training course in the Kansas City welfare office and then was assigned to the Independence office where she worked until September 1, 1966. Her beginning salary was $407.00 per month. This was increased to $427.00 on July 1st and to $448.00 five days later.

Soon after coming to work for the plaintiff (State of Missouri, Department of Public Health and Welfare, Division of Welfare), the defendant heard about "Educational Leave", a three-year program which was about to end, under which some few selected employees might attend school and still be continued on the welfare employee payroll. She was understandably interested in such a program and in its prospects. She contacted her supervisors, confided to them her wish to further her education under this program, and sought their support for an appointment. She was apparently highly regarded by the director, the assistant directors, the supervisors and the foremen—as witness her two salary in-

Elmore G. Crowe, Chief Counsel, Curtis J. Quimby, Senior Counsel, Edward D.

creases within six days on July 1st and July 6, 1966. She was of the chosen few, and was selected for one of the "Educational Leave Assignments". A written contract, out of which this suit arises, and embodying the terms of this educational subsidy, was entered into on May 16, 1966. We set out that contract in its entirety:

## "MISSOURI DIVISION OF WELFARE

### EDUCATIONAL LEAVE AGREEMENT

"☒ An educational Leave Salary in the amount of $407.00 per month has been approved for Mrs. Nancy Theresa O'Neal to attend Missouri University–Kansas City for one calendar year. This will be effective from the beginning of the school term September 1966.

          month     year

April 21, 1966                                    /s/   Proctor N. Carter
        Date                                          Signature of the Director

In accepting an educational leave salary from the Missouri Division of Welfare, I understand that the Division is trying to strengthen and improve services to clients served by the agency.

"I therefore agree to:

1. Work for a period of two calendar years for one calendar year spent on educational leave at the University of Missouri School of Social Work and Community Development Experimental Program in Kansas City, Missouri.
2. Work for a period of one calendar year for each semester spent on educational leave at any other college or university.
3. The Missouri Division of Welfare securing progress reports from the school I attend.
4. Accept assignment to a position and location as determined by the agency.

I agree to repay the educational leave salary and other financial aid provided, if I fail to live up to the agreement.

5–16–66                                         /s/   Nancy T. O'Neal
        Date                                          Signature of Applicant"

Filed June 14, 1968"

———◆———

Some doubt existed in the minds of this Court as to the authority of the Director of Welfare to enter into such an agreement for and on behalf of the State of Missouri. His representatives in court stated that they knew of no specific or statutory authority but assured the Court it was common practice, and that the issue had not been raised in this lawsuit. We therefore do not inquire further into the matter. We are also solemnly informed that this "Educational Leave Program" was not created primarily for the benefit of the trainees but rather because a "critical shortage of social workers" has come about, and it was believed that if a large number of social workers with master's degrees could be secured it would greatly enhance the overall well-being of the welfare society. The question arises—Should government pay more than twice as many dollars per month to educate social workers as it pays to GIs for educational training, even though the GIs may have already served their country in a rather dangerous capacity for one, two or three years?

In any event, Mrs. O'Neal (Luster) started to school on September 1, 1966, and continued until September 1, 1967. During this period she was paid a stipend of $407.-

00 per month, or a total of $4884.00. Her tuition in the sum of $560.00 was also paid by the plaintiff. As a result of this educational leave training, Mrs. Luster received her Master's Degree. After a three-weeks vacation, she .resumed her work for plaintiff in the Kansas City office with a salary of $572.00 per month. She continued this employment for six months ·and until her resignation on March 1, 1968.

By its petition plaintiff sought recovery from defendant of $4872.00 for breach of the contract. This figure represents the total salary ($4884.00) plus tuition ($560.-00) paid to defendant, less her February, 1968 salary of $572.00, which had been withheld by the state. Plaintiff made no attempt to show any actual damage which it suffered because defendant failed to work for the two years agreed upon. ˚Apparently plaintiff regards the contractual provision for a refund of educational leave salary as a sort of liquidated damage proviso. Probably that position is tenable but we need not here decide it.

Defendant answered, alleging her work for plaintiff after˚ her educational leave was under "such adverse, unreasonable and unprofessional conditions that defendant justifiably terminated her employment with plaintiff on March 1, 1968." She also asserted a setoff in her favor for her February, 1968 salary, specifically denied plaintiff's right to recover income taxes and social security deductions which had been made from her salary during her year at school, and further denied that, plaintiff could rightfully recover 75% of the total paid to her because that percentage had been paid from federal funds.

The court gave Instruction No. 3 which plaintiff claims was erroneous for not requiring a finding that plaintiff had breached ·the employment contract. The jury apparently found in accordance with this instruction and returned a nine-member verdict for defendant as follows:

"We, the undersigned jurors find that the defendant was justified in terminated her employment."

Signed by 9 jurors.

On appeal plaintiff lists five assignments of error. It says it was (1) entitled to a summary judgment, (2) its motion for a directed verdict should have been sustained, (3) Instruction No. 3 was erroneously given, (4) Instruction No. 4 was improper, and (5) it was error to admit the testimony of Mrs. Valerie Baggerly.

The plaintiff, by responses to interrogatories and the testimony of Mr. H. F. Hallam, Chief of the Bureau of Administrative Services, State Division of Welfare, proved the employment and compensation of defendant by plaintiff from January 3, 1966 to March 1, 1968, as we have detailed the same herein.

To uphold her defense that the working conditions in her employment from September 1, 1967 to March 1, 1968, when she resigned, were "so adverse, unreasonable and unprofessional" as to justify termination, defendant produced testimony which we now summarize. Defendant personally testified that her immediate supervisor Mrs. Euna Handy, barely spoke to her when she first reported for work, never gave her any instructions as to aid to dependent children work, to which area defendant had been assigned, said the office facilities were "very poor" with desks ."lined up facing each other", that the lighting was poor, there was no air conditioning, it was noisy and overall very distracting; that she was required to take the two-weeks orientation course which she had taken two years earlier; that Mrs. Handy told her that her predecessor had "skipped lunches and coffee breaks to keep her work load current" ·and defendant· would be expected to do the same; that if she asked Mrs. Handy a question about her work she was told to "look it up" for herself. Defendant said she was required to

spend most of her time doing "paper work", procuring filling out and filing various ADC forms; that when she protested to Mrs. Long, another supervisor, and to Mrs. Handy about this paper work and her assignment to ADC instead of to family social work, she was told "if it was too demanding it would be better if I looked elsewhere for work."

Mrs. Valerie Baggerly, a fellow employee and colleague on "Educational Leave", gave testimony similar to that given by Mrs. Luster. Plaintiff claims that Mrs. Baggerly's testimony was inadmissible. We are of the firm opinion that Mrs. Baggerly's evidence was corroborative of defendant's as to the working conditions which defendant contends justified her resignation. If so, it was admissible. In Charles F. Curry and Company v. Hedrick, Mo., 378 S.W.2d 522, 536, the Supreme Court said:

> "Evidence is considered relevant if the fact it tends to establish tends in turn to prove or disprove a fact in issue, or to corroborate evidence which is relevant and which bears on the principal issue. * * *" (Citing cases.)

In rebuttal the plaintiff offered testimony by Mrs. Handy, the supervisor, and by Carol Frey, a fellow employee, as to the existing working conditions. This testimony partially but rather indefinitely, refuted that of defendant and Mrs. Baggerly. However, the credibility and the determination as to which version to accept was for the jury.

Is defendant's proffered defense of unreasonable working conditions a legitimate defense? Does it and the evidence advanced present a fact issue for the jury, and if so proved to the satisfaction of the jury, is the breach of the contract by defendant justified? We believe all of these questions must be answered affirmatively. We quote from 56 C.J.S. Master and Servant § 40, pages 425–426:

> "An employee is not justified in abandoning his contract before the expiration of the term unless good and just causes exist therefor. * * * Generally speaking, any breach of the express or implied provisions of the contract of employment by the master, or any act or neglect on his part which is prejudicial to the safety, health, comfort, morals, or reputation of the servant, will be deemed a sufficient ground for abandonment. * * *"

> * * * * * *

> "Whether, in a given case, the ground assigned for abandoning the employment is sufficient is usually a question of fact, the burden of proving which is on the servant."

In our opinion defendant's testimony that she was required to resume the same duties as before her year's schooling, requiring that she work on ADC and spend most of her time preparing papers and shuffling statistics, plus the invitations by her supervisors to quit or look elsewhere for work, when she protested, or when she asked questions of her supervisors as to some of her work problems, presented a question for the jury. And if the jury resolved this fact question in defendant's favor, as it did, then her action in terminating the employment was justified. This being so, plaintiff was not entitled to either a summary judgment or a directed verdict.

Civil Rule 74.04(h), V.A.M.R., reads as follows:

> "When Not Rendered. In no case shall a summary judgment be rendered on issue triable by jury or the court without a jury unless the prevailing party is shown by unassailable proof to be entitled thereto as a matter of law."

As to the motion for directed verdict, we find the following statements from opinions of our appellate courts:

> "* * * it is only in the rarest and clearest of instances that verdicts may be

directed for plaintiffs in common law actions for damages, particularly those dependent on oral evidence. * * *" Richardson v. Moreland, Mo., 435 S.W. 2d 335, 338.

"It is well settled that the court should never withdraw a question from the jury unless all reasonable men, in the exercise of a fair impartial judgment, would draw the same conclusion from the facts which condition the issue. * * *" Buff v. Loch, Mo.App., 396 S.W.2d 263, 265.

"It is the settled rule that a motion for a directed verdict can be sustained only when the facts in evidence and the legitimate inference therefrom are so strongly against the verdict as to leave no room for reasonable minds to differ. * * *" Davenport v. Armstead, Mo. App., 255 S.W.2d 132, 137.

See also Brown v. Prudential Insurance Company, Mo.App., 375 S.W.2d 623, 628.

■ Plaintiff says that Instruction No. 3 constitutes error because it did not require a finding that plaintiff breached the employment contract. We set forth the instruction:

### "INSTRUCTION NO. 3

"Your verdict must be for defendant if you believe that she was required by plaintiff to work under such unreasonable conditions that she justifiably terminated her employment."

It is recited in the transcript that this instruction is a modified MAI 23.11. If so, it is such a broad modification as to amount to a new instruction. Moreover, MAI 23.11 is found in the chapter on International Torts. Instruction No. 26.02 MAI on breach of a bilateral contract as to affirmative defenses merely advises "(here insert number of affirmative defense instruction)", which procedure was followed in Instruction No. 4 given by the court in our case. In our opinion Instruc-

tion No. 3 presents generally defendant's affirmative defense. We believe the instruction correctly states the law and provides the jury with a sufficient understanding of the issue to be determined thereunder. If plaintiff wanted any word or phrase therein defined, —for example, "unreasonable conditions" it might have submitted or at least suggested such additional clarification. Kaiser Aluminum & Chemical Sales, Inc. v. Lingle Refrigeration Company, Mo.App., 350 S.W.2d 128, 133. In our opinion to require a further specific finding that plaintiff had breached the contract would be surplusage and failure to include such a finding does not constitute error. A similar instruction was approved in Zeppenfeld v. Morgan, Mo. App., 185 S.W.2d 898, 904.

■ Plaintiff says Instruction No. 4, submitted by defendant and given, was erroneous because it imposed on plaintiff the burden of proving admitted facts and unduly emphasized Instruction No. 3. We set out the instruction in full:

### "INSTRUCTION NO. 4

"In these instructions you are told that your verdict depends on whether or not you believe certain propositions submitted to you. In determining whether or not you believe any proposition, you must consider only the evidence and the reasonable inferences derived from the evidence. The burden is upon plaintiff to cause you to believe the propositions necessary to support its claim against defendant. The burden is upon the defendant to cause you to believe the propositions necessary to support (1) her defense that she justifiably terminated her employment as submitted in Instruction No. 3 and (2) her claim that she is entitled to certain credits and setoffs. If the evidence in the case does not cause you to believe a particular proposition submitted or if you are unable to form a belief as to any such proposition, then you cannot return a verdict requiring belief of that proposition."

This instruction is on the burden of proof and is MAI 3.01. It recites that the burden is on the plaintiff "to cause you to believe the propositions necessary to support its claim against defendant." We find no error in this direction. The instruction then recites that the burden is on defendant to show (1) her defense of justifiable termination, and (2) her claim for certain setoffs which alleged setoffs were pleaded and shown by the evidence. Certainly it was not error, insofar as the plaintiff is concerned at least, to place the burden of proof on the defendant as to these matters. Plaintiff's allegations of error as to Instruction No. 4 are denied.

The position of neither party here has enlisted our sympathy or aroused any feeling that equity rests with either camp. However, we do not believe that plaintiff has demonstrated any reversible trial error.

The judgment is affirmed.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court.

All concur.