James J. VONDRAS, Plaintiff-Respondent,

v.

TITANIUM RESEARCH & DEVELOPMENT COMPANY, a corporation, Defendant-Appellant.

No. 34731.

Missouri Court of Appeals, St. Louis District.

June 11, 1974.

Motion for Rehearing or Transfer Denied July 15, 1974.

Application to Transfer Denied Sept. 9, 1974.

Husch, Eppenberger, Donohue, Elson & Cornfeld, Myron Gollub, St. Louis, for defendant-appellant.

J. B. Carter, Paul Schramm, Clayton, for plaintiff-respondent.

SMITH, Presiding Judge.

Defendant appeals from a judgment entered following a jury verdict in a breach of employment contract case. Plaintiff was discharged by defendant after serving two months of an alleged 18 month contract of employment. The jury verdict was for $30,750 which the trial court reduced by remittitur to $16,000. The cause was originally heard in division and transferred for rehearing by the court en banc after opinion. Following that argument it was reassigned to the writer.

There was substantial conflicting evidence adduced at the trial but we review the record on the basis of the facts most favorable to the plaintiff. Prior to his employment by defendant, plaintiff was an independent manufacturer's representative for several different companies. Defendant is in the business of customized titanium hot-forming for the aerospace industry. In 1967 it became interested in the employment of a full-time manufacturer's representative to handle its product line. Plaintiff and Conrad Kubiak, secretary treasurer of defendant, and Francis Flynn, its president, had discussions leading to the

employment of plaintiff for the position. Plaintiff agreed to the employment and requested a letter memorandum of the terms. That was furnished and we set the letter out *in toto* in the margin.[1] Plaintiff terminated his relationship with other companies and began his employment but was discharged after two months by defendant. Defendant contended that the discharge was because plaintiff's work was unsatisfactory. This issue was resolved in favor of the plaintiff by the jury and defendant makes no complaint in that regard on appeal.

Instead it directs its main attack against the failure of the trial court to direct a verdict on the basis that the contract was void for want of mutuality; was unilateral and therefore unenforceable to the extent it remained executory; that plaintiff admitted failure of performance; and that as a matter of law plaintiff sustained no damage. Additionally defendant contends plaintiff was allowed to make a prejudicial argument and that plaintiff's verdict directing instruction was erroneous.[2]

■ Defendant bases its contentions concerning the unilateral nature of the contract and the lack of mutuality upon Solace v. T. J. Moss Tie Co., 142 S.W.2d 1079 (Mo.App.1940). That case involved a "contract" in which defendant promised to pay plaintiff for all railroad ties which he might produce over a five year period. Plaintiff did not promise to produce any ties but was paid for those he did produce. The contract was held to be void for lack of mutuality and unenforceable as to the executory portion. *Solace* presents the classic unilateral contract where one party promises to pay another for services or product which the other may or may not, at his discretion, supply. We think it clearly distinguishable from the case at bar for several reasons. First, the contract here is not unilateral. Contracts in which performance depends upon the wish, will or pleasure of one of the parties, as *Solace* did, are unilateral.

■ But as stated in Fullington v. Ozark Poultry Supply Co., Mo., 327 Mo. 1167, 39 S.W.2d 780 (1931) 1. c. 782[2]:

". . . a different rule of law should and does govern those functions of men to which a rule of reason can be applied. Of these there are acts which by agreements permit or require the exercise of judgment, or discretion, measured and limited by the concrete, extrinsic facts and circumstances of the particular case. These acts, predicated on the judgment of the actor, are capable of being tested by other men, applying the powers of their own minds and the lessons of hu-

---

1. "Jim Vondras
   630 Graham Road
   Florissant, Missouri 63031
   Dear Sir:
   In view of our conversation Monday, July 10, 1967, we need a résumé of your past experience and educational history.
   For accounting and payroll, we need the federal W-2 form filled out for proper tax deductions on salary.
   We are setting up the following:
   1. Salary of $1000 per month.
   2. Commission of 1 per cent on all new contracts that result from your efforts.
   3. Personal expenses paid on all autorized (sic) trips out of the St. Louis area.
   4. Minimum of 18 months service with the company.
      Very truly yours
      Titanium Research & Dev. Co.
      /s/ Conrad Kubiak
      /s/ Francis F. Flynn"

2. That instruction was:
   "Your verdict must be for plaintiff if you believe:
   First, defendant proposed in writing that plaintiff would accept employment with defendant under certain written terms and conditions, and
   Second, plaintiff after learning of defendant's proposal and within a reasonable time thereafter entered into the employ of the defendant, and
   Third, plaintiff did so with the intent to accept defendant's proposal, and
   Fourth, defendant did not allow plaintiff to complete the employment contract, but terminated plaintiff's employment without good cause, and
   Fifth, plaintiff was thereby damaged."

man experience to the thing done and under scrutiny."

Employment contracts normally fit that category. Implicit in every employment contract wherein an employer promises to pay a salary is a concomitant promise by the employee to serve and to devote his best efforts to the business of his employer. "An agreement to serve may be implied." Beebe v. Columbia Axle Co., 233 Mo.App. 212, 117 S.W.2d 624. By their mutual promises (that of the employer to pay, that of the employee to serve) the parties create a bilateral contract. See Fullington v. Ozark Poultry Supply Co., supra; Beebe v. Columbia Axle Co., supra, Griswold v. Heat Incorporated, 108 N.H. 119, 229 A.2d 183 (1967); Nikas v. Hindley, 99 Ga.App. 194, 108 S.E.2d 98 (1959); Wood v. Lucy, Lady Duff-Gordon, 222 N.Y. 88, 118 N.E. 214 (1917).

■ Here both parties regarded plaintiff's employment as full-time. Defendant's promise to pay plaintiff $1,000 per month salary was conditioned upon plaintiff's implied promise to devote his best efforts to his employer's business. It was, in fact, the claimed failure of plaintiff to perform his promise upon which defendant attempted to justify plaintiff's termination. The contract was based upon mutual promises to pay and to work and was bilateral. It is not necessary, even if the length of employment applied to the employer only, that each term or condition of a bilateral contract apply to both parties, if there is sufficient consideration to support a bilateral contract, as there is here. See Newhall v. Journal Printing Co., 105 Minn. 44, 117 N.W. 228 (1908).

■ Additionally, we do not believe the term of employment set forth in the letter applies only to the employer. It is not so restricted by its wording; and it is reasonable to conclude that it applied to and bound both parties. Conceding that personal service contracts cannot generally be specifically enforced, that does not preclude either party from recovering provable damages resulting from the breach by the other party. The employer also may recover his damages for breach of contract by the employee. See State ex rel. State Department of Public Health and Welfare v. Luster, 456 S.W.2d 600 (Mo.App.1970); Roth v. Speck, 126 A.2d 153 (D.C.App. 1956).

■ Nor do we concur with defendant's categorization of plaintiff's verdict-directing instruction as based upon unilateral contract. It hypothesizes offer, acceptance, breach and damage, the elements of a breach of contract action, all of which were in dispute. Whether consideration was sufficient to establish a contract is normally a question of law for the court and not a question of fact for the jury.

■ Defendant contends that the evidence establishes as a matter of law that plaintiff suffered no damages because he had income during the sixteen months following his dismissal in excess of his monthly salary. The burden of proof of mitigation of damages is upon the defendant. Streett v. Laclede-Christy Co., 409 S.W.2d 691 (Mo.1966) [9]. Plaintiff admitted the income, but contended it was for work he had done as a manufacturer's representative prior to his employment by defendant and which he would have received anyway or was advances for work to be done in the future. Additionally, defendant, through objections, precluded any evidence of what expenses plaintiff may have incurred in producing the income involved. Whether plaintiff's damages were mitigated, and if so, in what amounts depends in this case on his net income (after expenses) not gross income. The matter of mitigation was a fact for the jury which found against defendant, and defendant's proof did not establish mitigation or the absence of damages as a matter of law.

■ Defendant contends that plaintiff's failure to supply a resume was a failure of performance on plaintiff's part. No request for such a resume was made except in the letter and plaintiff's discharge was

not based upon the failure to provide such a resume. There is no persuasive evidence that supplying of a resume was a material element of the contract and this failure did not as a matter of law preclude plaintiff from recovery.

■ The record here does not warrant our considering the claim of prejudicial argument. No objection by defendant is contained in the transcript approved by the parties.

■ Defendant's contention that plaintiff's verdict-director failed to negative defendant's affirmative defense instruction of mitigation is also without merit. The "affirmative defense instruction" to which defendant refers said: "Your verdict must be for the defendant if you believe:
. . .

Fourth, that plaintiff suffered no damages as the result of his discharge by defendant."

The instruction was a converse, not an affirmative defense instruction. No reference in plaintiff's verdict-director was therefore required.

Judgment affirmed.

DOWD, C. J., and CLEMENS, KELLY and GUNN, JJ., concur.

WEIER, J., dissents.

McMILLIAN, J., dissents in separate opinion in which WEIER, J., concurs.

SIMEONE, J., not participating.

McMILLIAN, Judge (dissenting).

I respectfully dissent.

To adopt the majority opinion is to totally ignore plaintiff's own theory of the case. Plaintiff candidly admits, both at trial and on this appeal, that he was proceeding upon the theory that the contract in issue was unilateral. Interestingly enough, plaintiff also conceded that he was not bound by the contract and could stop performance at any time he chose to do so. Moreover, a cursory examination of plaintiff's verdict-director, set out in footnote number two (2) in the majority opinion, indicates that the instruction submitted a promise for an act, i. e., a unilateral contract. Nowhere does the questioned instruction submit a bilateral agreement, i. e., an agreement based upon mutual promises each given in exchange for the other.

While the majority opinion recognizes the validity of unilateral contracts for services or products which the other party, at his discretion may or may not perform or supply the requested services or products, they make the bold assertion that the same rule does not apply to the employment contract. Fullington v. Ozark Poultry Supply Co., 327 Mo. 1167, 39 S.W.2d 780 (1931), and Beebe v. Columbia Axle Co., 233 Mo.App. 212, 117 S.W.2d 624 (1938).

The Fullington case is inapposite. There, Fullington and Ozark Poultry Company had entered into a written, signed agreement for Fullington to serve as Ozark's general sales manager in charge of all sales for a period of five years at a stated rate of compensation, and Fullington accepted the employment. Both parties agreed that Fullington was to devote his entire time and attention to the business of Ozark, if and when, in his opinion and judgment, the affairs of Ozark required it. Also Fullington was given the right to use his own judgment as to the amount of time he was to spend in the office and on the road in the performance of his duties. The lower court sustained Ozark's demur to Fullington's petition for breach of contract because it failed to state a cause of action. The decision was reversed by the court as it found the obligations of the parties arose from mutual promises to hire and to serve, supplemented by actual service. In the instant case, unlike the Fullington case, plaintiff neither signed an agreement nor promised to be bound for anything. The only promise came from the defendant in exchange for an act.

In the Beebe case, supra, the court was dealing with an agency contract, coupled with an interest to the extent of $1500.00 expended by plaintiff in his preliminary efforts for laying the foundation for a successful business in the sale and distribution of defendant's axles. The question posed by the court for decision was: whether the defendant, having revoked the plaintiff's agency, was liable to the plaintiff for the reasonable value of his services rendered and his expenditures incurred. The court, among other things, declared, "Even if invalid and nonenforceable . . . by reason of its unilateral character or by reason that, . . . it was subject to termination at any time thereafter by either of the parties—it was nevertheless *valid and binding* to the extent that *it was performed*." (Emphasis added.) In our case defendant concedes and, in fact, has paid plaintiff for all of his services performed. No where in either *Beebe* or the *Fullington* case is there anything to suggest that plaintiff was entitled to be paid or was, in fact, paid for the executory portion of the contract. Moreover, in neither of the two cited cases was it even intimated that Beebe or Fullington was not performing his duty in a satisfactory manner.

Here, the plaintiff was discharged by Kubiak and Flynn on September 8, 1967, for failing to properly perform his duties in that: (1) he did not secure manufacturing orders that Titanium was capable of filling; (2) he acted contrary to the officer's orders; and (3) he failed to supply a resume as required as a condition of employment. While on a trip to Titusville, Florida, plaintiff was allegedly instructed to go to the Dallas-Fort Worth area. Instead, Vondras traveled to Hagerstown, Maryland, where, according to defendant's president, the company had no business. Plaintiff testified that his trip to Maryland had been part of the itinerary he had submitted to Flynn for his approval prior to his trip and which itinerary Flynn had approved. Upon learning that Vondras had traveled to Maryland instead of Texas,

Flynn and Kubiak terminated plaintiff's services.

The plaintiff's theory of recovery in this case is based upon the premise that the letter of July 12, 1967, created a contract that the defendant could not revoke after the contract had been partially performed. To support his position, plaintiff cites the Restatement of Contracts, § 45 (1932):

"If an offer for a unilateral contract is made, and part of the consideration requested in the offer is given or tendered by the offeree in response thereto, the offeror is bound by a contract, the duty of immediate performance of which is conditional on the full consideration being given or tendered within the time stated in the offer, or, if no time is stated therein, within a reasonable time."

For example:

"1. If A says to B, 'I will not ask you to promise to instal an intra-mural telephone system which will work perfectly in my building, but if you care to try to do it, I will pay you $1,000 if you suceed.'

"B begins the work. When it is partly finished, A revokes his offer. If B can prove that he would have complied with the terms of the offer, he has a right to damages—the contract price less the cost of completing the installation . . ." Rest. Contracts, § 45, Comments and Illustrations (1932).

I find no inconsistency between § 45 of the Restatement of Contracts and the Solace v. T. J. Moss Tie Co., 142 S.W.2d 1079 (Mo. App.1940). The illustration cited from the Restatement about a unilateral offer of $1,000.00 to repair a telephone system, revoked after the offeree commenced work but before he finished the work, is certainly consistent with Missouri law. Certainly where performance has begun and the contract is not divisible, equity and good conscience, would demand that the offeror be estopped from revoking his offer. This for the reason that the offeree should at

least be given a reasonable time to complete performance. This is in no way comparable to the facts in the *Solace* case, or in the case at bar, where the alleged "part performance" of the offer of a *divisible unilateral contract* was fully compensated by periodical payments for the work done.

The defendant contends that, even if the letter of July 12, 1967, is construed as an agreement in writing between the plaintiff and the defendant, the agreement is void for lack of mutuality. It is defendant's further contention that after pleading a written contract, the plaintiff submitted his case on a unilateral contract theory as evidenced by plaintiff's verdict-directing Instruction No. 3.[1] Defendant suggests that, even if a unilateral contract is found, it would be unenforceable to the extent that it remained executory.

Under the rationale announced by this court in Solace v. T. J. Moss Tie Co., 142 S.W.2d 1079 (Mo.App.1940), the letter in this case is void for lack of mutuality and the executory portion of the alleged agreement is not binding upon the parties. In the *Solace* case plaintiff sought to recover damages arising out of an alleged breach by defendant of the remaining executory part of an alleged five year employment contract. The case involved a letter from the vice-president of the defendant company, Davis, to the Superintendent of defendant's operation in Louisiana, Wagner, with a copy going to the plaintiff, in which defendant's vice-president identified the plaintiff and acknowledged a five-year employment contract with the plaintiff for the production of railroad ties. Solace testified that the defendant's vice-president stated he " . . . *would write out a contract and mail it to Mr. Wagner* . . ." (l.c. 1081). This court found that " . . . The letter itself is but an admission that Davis had entered into a contract with Solace, and that said agreement embodied the several provisions set out in the letter." (l.c. 1081).

The letter in this case and the circumstances under which it was written are nearly identical to the situation in the Solace case. This court stated in *Solace* that:

"Even though the letter itself were construed as an agreement in writing between defendant and plaintiff, we find therein no mutual promises to hire and to serve or to purchase and to produce. Nowhere therein do we find that plaintiff either agreed or bound himself to devote any of his time or effort for a period of five years to the production of ties and lumber for defendant. This letter which is the basis of plaintiff's action falls within that class of agreements which depend for performance upon the wish, will, or pleasure of one of the parties, and is, therefore, unilateral and void for want of mutuality. American Law Institute's Restatement of the Laws of Contract, § 13; Fuqua v. Lumbermen's Supply Co., 229 Mo.App. 210, 218, 76 S. W.2d 715; Hudson v. Browning, 264 Mo. 58, 64, 174 S.W. 393; Campbell v. American Handle Co., 117 Mo.App. 19, 23, 94 S.W. 815; Aden v. Dalton, 341 Mo. 454, 107·S.W.2d 1070, 1073."

Further support for defendant's argument can be found in Spencer v. General Electric, 243 F.2d 934 (8th Cir. 1957), where the court said, "Unilateralness or want of mutuality, if it exists, is available only to escape such executory performance as may be remaining under agreement or relationship and does not prevent application of provisions of agreement or relationship to such performance as has been completed."

The letter in this case fails to qualify as a bilateral contract in that there is a lack of mutuality of obligation. There are no mutual promises between the parties embodied in the letter that would mutually bind the parties to enforceable duties to each other. The letter is void of any mutual promises to hire and to serve. The absence of such mutual promises indicates

1. See Footnote No. 2 in majority opinion.

that there is a lack of sufficient consideration upon which a valid contract could be formed. Without the needed consideration there is no binding contract. Obviously, the plaintiff must have reached the same conclusion because his instruction to the jury was based upon a unilateral contract.

In this case, as in the *Solace* case, the plaintiff sought to recover damages arising out of an alleged breach by the defendant of the remaining executory part of the alleged employment contract. This court held (at l.c. 1082), ". . . But mere part performance of a contract which is not binding on the parties does not make it binding in so far as it remains executory. 17 C.J.S. Contracts § 100, p. 450; Campbell v. American Handle Co., supra; Fuqua v. Lumbermen's Supply Co., supra; Roberts v. Harmount Tie & Lbr. Co., Mo. App., 264 S.W. 448, 449. Therefore, . . . the contract lacks mutuality, it is void so far as the executory portion of the contract is concerned, and no action for a breach of such a contract lies."

The law in Missouri is well-settled that where there is a want of mutuality in a unilateral contract situation, performance of the executory portion of the contract is not binding on the parties. Jensen v. McCall's Estate, 426 S.W.2d 52, 57 (Mo.1968); Bengimina v. Allen, 375 S.W.2d 199, 204 (Mo.App.1964); Martin v. Ray County Coal Co., 288 Mo. 241, 232 S.W. 149, 151 (1921). See also, Zeyher v. S. S. & S. Manufacturing Company, 319 F.2d 606 (7th Cir. 1963), which involved a claimed written contract in the form of a letter to the employee from the president of the company, in which he said that the company agreed to employ plaintiff for three years. The employment was terminated about fourteen months later. The court held, just as *Solace* did and as our courts have held, that the contract was lacking in mutuality, that plaintiff's "part performance" under the contract did not render it valid, and denied plaintiff's claim for damages for the unexecuted term of the alleged contract.

Accordingly, I find that as a matter of law the contract between the two parties is void for lack of mutuality of obligation and plaintiff therefore does not have a cause of action for the breach of the executory portion of the contract. I would reverse the judgment with the direction that the trial court enter judgment for the defendant.

