424 F.Supp. 442 (1976)
Harry V. JUMP, Superintendent of Insurance, State of Ohio, Plaintiff,
v.
MANCHESTER DATA SCIENCES CORPORATION, Defendant.
No. 76-672C(4).
United States District Court, E. D. Missouri, E. D.
December 30, 1976.
*443 J. L. Pierson and William G. Ohlhausen, Lewis, Rice, Tucker, Allen & Chubb, St. Louis, Mo., for plaintiff.
Merle L. Silverstein, Rosenblum, Goldenhersh, Silverstein & Zafft, Clayton, Mo., Mark I. Bronson, Newman & Bronson, St. Louis, Mo., for defendant.

MEMORANDUM
NANGLE, District Judge.
Plaintiff Harry V. Jump, Conservator of the Manchester Insurance and Indemnity Company, brought suit herein pursuant to 28 U.S.C. § 1332. In Count I of the complaint, plaintiff seeks an order requiring defendant Manchester Data Sciences Corporation to furnish plaintiff with all of the insurance data in its possession, submitted to it by Manchester Insurance and Indemnity Company, and the programs and formats necessary to enable plaintiff to transfer the insurance data to its own data processing equipment. In Count II of the complaint, plaintiff seeks the return of funds allegedly advanced by Manchester Insurance and Indemnity Company to defendant.
This cause was tried to the Court without a jury. Pursuant to the requirement of Rule 52, Federal Rules of Civil Procedure, the Court hereby makes the following findings of fact and conclusions of law:

FINDINGS OF FACT
1. Plaintiff Harry V. Jump is a citizen of the state of Ohio and at all times relevant herein was the Superintendent of Insurance of the state of Ohio. On September 23, 1975, plaintiff was appointed Conservator of the Manchester Insurance and Indemnity Corporation ["MI&I"] which is an insurance corporation organized and existing under the laws of the state of Ohio. MI&I is a wholly-owned subsidiary of Manchester Life and Casualty Management Corporation. Defendant Manchester Data Sciences Corporation is a corporation organized and existing under the laws of the state of Missouri and has its principal place of business in Missouri.
2. On April 3, 1975, MI&I entered into an agreement with defendant whereby defendant agreed to process insurance data submitted by MI&I on electronic data processing discs, tapes and other media. This agreement provides in part that:
All computer programs, written procedures, and similar items shall always remain the property of MDSC [defendant] unless there is an express written provision within this Agreement to the contrary.
The only provision in the agreement which is applicable provides that:

*444 All computer programs that are specifically developed for the client may be purchased by the client.
3. On November 30, 1973, MI&I paid defendant $100,000.00 for the acquisition of programs used in processing data for MI&I. On August 26, 1974, plaintiff paid a third party for the acquisition of a direct premium billing computer system known as "Cabils". The evidence failed to establish that these programs were the programs used by defendant to process MI&I's insurance data under the April 3, 1975 agreement.
4. At the present time, plaintiff has no need for the data stored on the computer system. The raw data was returned to MI&I after being processed by defendant.
5. James B. Hutchings, president of MI&I, testified that MI&I had been interested in establishing an in-house computer service. As a result, defendant corporation was formed. During the period May 17, 1974 through July 7, 1975, MI&I made cash advances to defendant totaling $230,000.00. Of this amount, approximately $50,219.00 was off-set against billings for computer services. These advance payments were made for the purpose of permitting defendant to become a viable in-house system. The advances were to be credited against future billings and were to be repaid when, as, and if defendant corporation had the capability of repaying the advances from profits or cash flow. To date, defendant corporation has not shown a profit and continues to operate in a deficit. This agreement, which is not reflected in any writings, was reached jointly by the companies involved. The board of directors of MI&I were desirous of establishing an in-house computer service and were informed that additional funds were necessary to get defendant corporation established.
6. The advances were recorded on the books of MI&I as assets but were then disallowed as required by insurance accounting practice. This indicates an asset of questionable value.
7. In April of 1976, defendant was notified that the April 3, 1975 agreement between defendant and MI&I was canceled. MI&I has not used defendant's services since.
8. Demand was made upon defendant for repayment of the $179,780.57 on July 14, 1976. Defendant has not repaid this sum in whole or in part.

CONCLUSIONS OF LAW
This Court has jurisdiction over the subject matter and the parties to this suit. 28 U.S.C. § 1332.
The Court has found that plaintiff failed to prove that MI&I owned the computer systems used by defendant under the April 3, 1975 agreement. This agreement specifically provided that the computer programs belonged to defendant and that the programs would be purchased. Under these circumstances, the Court concludes that plaintiff is not entitled to be furnished with the insurance data in defendant's possession and the programs and formats necessary for the transfer of that information to plaintiff's equipment.
Plaintiff argues that the moneys advanced to defendant should be returned because the agreement between the parties, that the moneys were to be repaid when, as and if defendant had the capability of repaying the advances from profits or cash flow, is unconscionable and lacks mutuality. The Court disagrees.
The general rule is that courts will not declare an agreement to be void simply because it is unwise. 17 Am.Jur.2d Contracts § 192 (1964). If, however, the bargain "is a bargain `such as no man in his senses, and not under a delusion, would make on the one hand, and as no honest and fair man would accept on the other'", a court will find the agreement to be unconscionable and refuse to enforce the same. Wenninger v. Mitchell, 139 Mo.App. 420, 122 S.W. 1130, 1132 (1909). See also, Ball v. Reyburn, 136 Mo.App. 546, 118 S.W. 524 (1909); 14 Williston on Contracts § 1632 (3d ed. 1972) (tests of unconscionability include the above cited rule and that ". . . no decent, fairminded person would view the *445 ensuing result without being possessed of a profound sense of injustice . . .".) Cf., Drake v. Greener, 523 S.W.2d 601 (Mo. App.1975) (". . . where a person has been induced to part with a thing of value for little or no consideration, equity will seize upon the slightest circumstance of fraud, duress, or mistake for the purpose of administering justice in the particular case.".)
In the present case, plaintiff has failed to adduce any evidence of fraud, duress or mistake. The Court does not agree that the advancement of funds to defendant corporation was such a bargain as no man in his senses would make and no honest and fair man would accept. Under the circumstances of this case, the advancement of funds was in accordance with, and in furtherance of, a result desired by the board of directors of MI&I.
In Shelton v. M & A Electric Power Cooperative, 451 S.W.2d 375, 379, fn. 5 (Mo.App.1970), the court noted that according to the Restatement of Contracts § 77, "`any promise whether absolute or conditional is a sufficient consideration' for a contract". While it is true that ". . . contracts which depend for performance upon the wish, the will, or the pleasure of one of the parties are unilateral and cannot be enforced", Fullington v. Ozark Poultry Supply Co., 327 Mo. 1167, 39 S.W.2d 780, 782 (Mo.1931); Vondras v. Titanium Research & Development Company, 511 S.W.2d 883, 885 (Mo.App.1974), such is not the case herein. Defendant is obligated to repay the moneys advanced should that capability, from profits or cash flow, exist. This obligation is clearly one that can be enforced if defendant earns profits but fails to repay the sums advanced. Under such circumstances, defendant is under an obligation to MI&I and therefore the contract is not void for lack of mutuality. Cf., 1A Corbin on Contracts § 152 (1963); Fullington v. Ozark Poultry Supply Co., supra.
It is the Court's conclusion that judgment must be entered for defendant. Plaintiff's evidence was insufficient to warrant a conclusion that MI&I had, in fact, purchased the computer programs and formats. The evidence failed to establish an equitable basis for ordering the same. Similarly, plaintiff's evidence failed to establish a basis for ordering a payment of the moneys advanced. Because of this lack of evidence, the Court must enter judgment for defendant.