585 F.Supp. 154 (1984)
Janet ALLEN and Jason Allen, b/n/f Janet Allen, Plaintiffs,
v.
KAISER ALUMINUM AND CHEMICAL CORPORATION, a foreign corporation, Defendants,
and
KAISER ALUMINUM AND CHEMICAL CORPORATION, a corporation, Third-Party Plaintiff,
v.
NORANDA ALUMINUM, INC., a corporation, Third-Party Defendant.
No. S 81-176C(D).
United States District Court, E.D. Missouri, Southeastern Division.
March 26, 1984.
*155 *156 C.H. Parsons, Jr., Dexter, Mo., and James E. Reeves, Caruthersville, for Kaiser.
Gerald Tockman, St. Louis, Mo., for Noranda.

MEMORANDUM AND ORDER
WANGELIN, District Judge.
This matter is before the Court upon the motion of third-party plaintiff Kaiser Aluminum and Chemical Corporation (hereinafter Kaiser) for summary judgment or in the alternative to strike affirmative defenses set forth by third-party defendant Noranda Aluminum, Inc. (hereinafter Noranda). Noranda opposes Kaiser's motion and has filed a counter-motion summary judgment. After the third-party action was severed from the primary case, by order dated April 28, 1983, all third-party motions were held in abeyance pending the outcome of the primary case. The Court now takes up consideration of those third-party motions.[1]
This case arises out of the fatal injury of an employee of Noranda, allegedly as a result of Kaiser's negligent design, manufacture and installation of certain equipment installed in Noranda's aluminum plant and operated by the deceased.[2] After the accident the family of the deceased sued Kaiser, which thereupon filed a third-party complaint against Noranda alleging a contractual obligation to indemnify Kaiser for any liability incurred. The primary case was severed and tried to the Court, and, on June 16, 1983, judgment was rendered in favor of the plaintiff and against Kaiser in the amount of Four Hundred Seventy Five Thousand Seven Hundred Eighty Seven Dollars and Forty Eight Cents ($475,787.48), plus costs and interest. The existence and extent of Noranda's contractual duty to indemnify Kaiser for that judgment forms the basis for the action now before the Court.

Cross-Motions for Summary Judgment
The sole basis for Kaiser's claim for indemnity arises out of the terms of the License Agreement (hereinafter the Agreement) between the parties, which was entered into by both parties on October 1, 1968. The Agreement embodies the obligation of Kaiser to provide technology for the design, engineering and procurement of equipment for Noranda's aluminum reduction plant, [e.g., "start-up" assistance], and to provide training and technical assistance in the operation of the plant. Pursuant to the terms of the Agreement, Kaiser provided specifications for stacking of certain *157 aluminum billets which later caused the fatal injury. The pertinent portion of the Agreement reads as follows:
Except for any personal injury or death caused by the sole negligence of [Kaiser], [Noranda] shall defend and save [Kaiser] harmless from any claim made in connection with any injury or death arising from or connected with any action or nonaction of [Kaiser's] employees or agents while on or off the premises of [Noranda] in the performance of this Agreement.
It is clear from this language that the indemnity clause was intended to be effective at least during the period when the plant was being constructed. The death of the Noranda employee, however, occurred in May 1977; start-up assistance by Kaiser pursuant to the Agreement was substantially completed by the end of 1970. Hence, the critical issue is whether Noranda's contractual obligation to indemnify Kaiser for liability for injuries at the facilities extends beyond the completion of the start-up assistance.
Summary judgment may be rendered only where there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). This circuit has recognized that summary judgment is appropriate to resolve issues involving the interpretation of unambiguous contracts. Howard v. Russell Stover Candies, Inc., 649 F.2d 620, 623 (8th Cir.1981); Parish v. Howard, 459 F.2d 616, 618 (8th Cir.1972). Further, the preliminary question of whether an ambiguity exists is a question of law to be decided by the Court. See 10A Wright, Miller & Kane, Federal Practice and Procedure § 2730.1 at 275-79 (2d ed. 1983).
Kaiser seeks a summary judgment ruling that the indemnity agreement is valid and binding, and that under the agreement Noranda is liable for the judgment rendered against Kaiser. Noranda, on the other hand, seeks summary judgment on the grounds that the injury by the plaintiff was beyond the scope of the indemnity provision. The language of the indemnity agreement at issue here is plain and unambiguous. Noranda agreed to indemnify Kaiser for personal injury liability "arising from or in connection with any action or non-action" of Kaiser employees "in the performance of this agreement." Reading the Agreement as a whole, the Court notes that the "performance" required of Kaiser under the agreement was to provide Noranda and license Noranda to use the various systems required to operate the plant. In other words, Kaiser designed the plant for Noranda so as to utilize up-to-date technology. Part of the system designed by Kaiser was the device for stacking aluminum billets, which later gave rise to the injury involved herein.
The action later brought against Kaiser was based upon the negligent "design and manufacture" of the stacking system. There can be no question, therefore, that that claim arose out of allegedly negligent actions taken by Kaiser in the performance of its obligations under the agreement. There is nothing in the agreement remotely suggesting that the broad "arising from or in connection with" language of the indemnity provision was not intended to be given its plain meaning, or was limited by any time restraints.
Nor is the "caused by the sole negligence" language of the provision a bar to summary judgment. Noranda argues that it is entitled to a jury trial on the issue of whether the employee's death resulted from Kaiser's sole negligence, and that it is not bound by the finding in the main action that both Kaiser and Noranda were liable (See Memorandum filed June 16, 1983, at p. 8). The Court, however, need not rely upon that finding. To find that Kaiser was not the sole cause of the accident the Court need only find that there was another contributing cause to the accident, however slight. Where there are sufficient facts established in the record such that only one conclusion may reasonably be drawn therefrom, negligence may be found as a matter of law. Flying Diamond *158 Corp. v. Pennaluna & Co., Inc., 586 F.2d 707, 713 (9th Cir.1978). Although the degree of Noranda's contributing negligence may be appropriate for resolution only by a jury, this Court can find on the basis of the present record that Noranda was to some degree responsible for the fatal accident, and that therefore Kaiser was not "solely" negligent.
It is clear, therefore, that Kaiser is entitled to summary judgment as to the validity and legal effect of the indemnity provision, absent evidence that the clause is invalid for reasons extrinsic to the Agreement. Arguments with regard to this have been presented in the form of affirmative defenses.

Noranda's Affirmative Defenses
Noranda presents nine affirmative defenses which it argues should preclude summary judgment. However, as noted below, none of these grounds constitute an adequate defense to Noranda's duty to indemnify under the agreement.
1. Anti-trust violation. Noranda argues that Kaiser "used its indemnity clause provision to create a barrier to entry in the aluminum reduction market," (Noranda Memorandum, filed May 19, 1982, at p. 3) and that for the Court to enforce the provision would therefore be to enforce inpermissible antitrust violations. The only legal basis for such a defense asserted by Noranda is A. & E. Plastik Pak Co., Inc., v. Monsanto Co., 396 F.2d 710 (9th Cir. 1968).
Monsanto, however, provides little if any support for Noranda's position. As the Court of Appeals for the Ninth Circuit noted in that case,
The critical question in an antitrust context is whether the restriction may fairly be said to be ancillary to a commercially supportable licensing arrangement, or whether the licensing scheme is a sham set up for the purpose of controlling competition ....
Id. at 715. Monsanto dealt with the validity of agreement between two competitors not to compete, which was the very heart of the contract between the parties to that litigation.
In the present case, there is absolutely no basis in the record to support an allegation that this standard indemnity clause, contained in the complex twenty-three (23) page licensing agreement, which provides for indemnification for personal injury liability, constitutes a "sham set up for the purpose of controlling competition." Certainly the licensing arrangement between Noranda and Kaiser is "commercially supportable." Furthermore, despite numerous assertions and considerable argument by Noranda, there is absolutely no evidence in the record of the "contract, combination or conspiracy" required by Section 1 of the Sherman Act, or of the existence of monopoly power required by Section 2. See 15 U.S.C. §§ 1, 2. In short, the Court finds no basis in the record upon which to sustain Noranda's argument that enforcement of the indemnity agreement constitutes a violation of antitrust laws.
2. Public policy. The basis for this defense is that under California[3] law, it is against public policy for any party to enter into an agreement with another party seeking indemnity for claims arising from its sole negligence. Noranda Memorandum, filed May 19, 1982, at p. 5, citing MacDonald & Kruse, Inc. v. San Jose Steel Co., Inc., 29 Cal.App.3d 413, 105 Cal. Rptr. 725 (1972) and E.L. White, Inc. v. City of Huntington Beach, 579 P.2d 505, 146 Cal.Rptr. 614, 21 Cal.3d 497 (1978). This defense is not pertinent to the present action, however, since the Agreement contains *159 an express exception to the indemnity clause for "personal injury or death caused by the sole negligence of [Kaiser]." Further, Kaiser is seeking to recover for liability arising not from its sole negligence, but rather from separate contributing causes.
In its supplemental memorandum filed December 2, 1983, Noranda expands its position to argue that it is contrary to public policy to permit a supplier of technology to shift liability to the end user of that technology. No support, however, is provided for its position. This Court is not of the opinion that such a voluntary liability shift violates any policy, provided that it is reasonable, negotiated freely and does not absolve any party from liability for its sole negligence. The provision in question herein clearly meets those requirements.
3. Active Negligence. This defense is grounded in the argument that the provision at issue is a "general" and not a "specific" indemnity clause. Noranda argues that under California law, a general indemnity clause does not afford protection to an indemnitee who has been actively negligent; a specific indemnity clause, on the other hand, protects the indemnitee whether the negligence is active or passive. Rossmoor Sanitation, Inc. v. Pylon, Inc., 119 Cal.Rptr. 449, 452, 532 P.2d 97, 100-01, 13 Cal.3d 622 (1975). See Noranda Memorandum, filed May 19, 1982, at p. 6.
The distinction between a general and specific provision is a question of law that can be resolved by reference to the contract: "if an indemnity clause does not address itself to the issue of an indemnitee's negligence, it is referred to as a `general' indemnity clause." Rossmoor, 119 Cal.Rptr. at 452, 532 P.2d at 150. In the present case, however, the provision does specifically address itself to the issue of Kaiser's own negligence, and is therefore a specific indemnity clause which protects both active and passive negligence. Hence, the active negligence defense is not applicable.
4. Unconscionability. Noranda alleges that the indemnity clause cannot be enforced because it is substantively unconscionable. The purported reason is that the clause by its plain language is effective as long as Noranda continues to use the technology provided by Kaiser; therefore, Noranda argues that it is "a bargain such as no man in his senses, and not under a delusion, would make on the one hand, and as no honest and fair man would accept on the other...." Jump v. Manchester Data Sciences Corp., 424 F.Supp. 442, 444 (E.D. Mo.1976), citing Wenninger v. Mitchell, 139 Mo.App. 420, 122 S.W. 1130 (1909). See Noranda Memorandum, filed May 19, 1982, at p. 6.
There is nothing in the present case comparable to the facts presented in Wenninger, which invalidated a contract to aid a recently widowed woman in securing a new husband. Jump, on the other hand, held that a contract to provide computer software service was not unconscionable, even though money advanced under the contract was to be repaid only "when, as and if defendant corporation had the capability of repaying the advances from profits or cash flow." 424 F.Supp. at 444. The Court in that case reinforced the "general rule ... that courts will not declare an agreement to be void simply because it is unwise." Id. While the provision in question may not be a wise business decision, the Court cannot find that it is so unreasonable as to be inherently unconscionable, particularly when viewed in the context of various other provisions in the Agreement beneficial to either party.
Noranda further argues that the provision is unconscionable because it was "forced upon them" as a result of unequal bargaining power. The relative bargaining power of these parties with regard to this contract has been shown through abundant evidence collected through two years of litigation, and there are no facts in dispute which reasonably support Noranda's assertion that it was a "victim" of unequal bargaining. Thus, the Court finds this defense is without merit and does not preclude entry of summary judgment.
*160 5. Unlawful. Noranda's claims that the agreement is unlawful is "based upon the facts that the clause is both violative of the antitrust laws and unconscionable." Noranda Memorandum, filed May 19, 1982, at p. 7. Both of these defenses, however, have been considered above, and resolved in favor of Kaiser.
In its memorandum in response filed December 9, 1983, Noranda further argues that the agreement is unlawful in that it violates certain California statutory prohibitions. In support of its position, Noranda cites two sections of the California Civil Code, both of which were amended in 1980 in such a manner as to require that a limitation of liability for design defects in a construction contract be expressly set forth in the contract. Prior to the 1980 amendments, such an express statement of the agreement allocating or limiting liability was not required.[4]
Noranda argues that the 1980 amendment was intended only to clarify existing law and therefore should be applied to invalidate the indemnity provision with regard to design defects because it was not expressly set forth in the Agreement. The Court, however, cannot consent to such a retrospective application of the law. Accord, Whitmire v. H.K. Ferguson, 261 Cal.App.2d 594, 68 Cal.Rptr. 78 (1968). At the time the contract was entered into, both parties were entitled to rely on the statutory provisions (or lack thereof) then in effect regarding the content of the contract required to effectuate their intent. There is no evidence provided that the California legislature, in passing legislation to control future construction contracts, intended to re-write valid contracts already in existence. Accordingly, the Court finds Cal.Civil Code § 2782.5 as written at the time the Agreement was entered into (October 1, 1968), to be controlling on the present action.
6. Timeliness. Noranda asserts in its answer that the indemnity claim is invalid because it "did not arise during the time period within which the ... Agreement [between Kaiser and Noranda] was being performed by the parties thereto." This claim is nothing more than another way of asserting that the claim is beyond the scope of the language of the indemnity provision. This issue has previously been considered and resolved. See pp. 157-158, supra.

Implied Warranty
Noranda asserts that Kaiser breached an implied warranty to provide a properly designed and/or manufactured billet racking and stacking system that was reasonably safe to use. Noranda correctly argues that this issue is separate and distinct from the issue of the enforceability of the indemnity clause. In essence, it constitutes a counterclaim upon which Noranda seeks to obtain a judgment which would offset any award under the indemnity clause.
The implied warranty claim is based upon a promise by Kaiser in Paragraph 12 of the Agreement that the technology provided shall be "sufficiently developed to permit commerical operation." Noranda argues that it is implicit in this promise that the technology provided will be reasonably safe. This assertion, however, flies in the face of other provisions in the Agreement. Paragraph 12 specifically set forth certain express warranties agreed to *161 by Noranda and Kaiser, and provides further that Kaiser
makes no other warranty nor representation, implied or expressed, in law or in fact, concerning the design, construction, operation, maintenance and/or repair of the Facilities or the cost, quality or quantity of aluminum products that can be or will be produced from the Facilities. (emphasis added).
The defect which gave rise to Kaiser's liability and which would give rise to a breach of implied warranty is certainly within the scope of the above language. Noranda has given no reason why the plain language set forth above should not be upheld, and this Court finds none. Thus, the disclaimer of the alleged implied warranty will be enforced, and the claim for offset will be denied.
In summary, the Court finds no issue of fact regarding the validity, meaning or legal effect of the indemnity provision between Kaiser and Noranda. All elements of the Agreement have been satisfied, and Kaiser is entitled as a matter of law to have the Agreement, including the indemnity provision, enforced.
Accordingly,
IT IS HEREBY ORDERED that Kaiser Aluminum and Chemical's motion for summary judgment be and is GRANTED, and that Noranda Aluminum, Inc's., motion for summary judgment be and is DENIED.

JUDGMENT
In accordance with the memorandum and order of this Court filed this date and incorporated herein,
IT IS HEREBY ORDERED, ADJUDGED AND DECREED that third-party plaintiff, Kaiser Aluminum and Chemical Corporation, shall have judgment against third-party defendant, Noranda Aluminum, Inc., in the amount of Four Hundred Seventy Five Thousand Seven Hundred Eighty Seven Dollars and Forty-Eight Cents ($475,787.48), with interest accruing at the rate of Nine Percent (9%) from June 16, 1983, plus the total costs assessed against third-party plaintiff in the main action; and
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the costs of this action be and are assessed against Noranda Aluminum, Inc.
NOTES
[1] In addition to the summary judgment motion, there are also pending numerous discovery motions, as well as a motion to modify judgment, all of which are opposed. In view of the disposition of this case on the merits, these latter motions are rendered moot and need not be addressed.
[2] A full description of the facts is set forth in the Memorandum of this Court dated June 16, 1983.
[3] Noranda argues that California law applies, based on the provision (Paragraph 19) that the Agreement "shall be interpreted in accordance with the laws of the State of California." This Court agrees; under Missouri law, the parties to a contract may agree on the law applicable to the agreement, so long as the jurisdiction chosen bears some reasonable relation to the transaction. First National Bank of Louisville v. Insurance Centers, Inc., 560 F.Supp. 1261, 1263 (E.D.Mo.1983). Since Kaiser's principal place of business is in California, such a relationship does exist.
[4] Cal.Civil Code § 2782 provides that provisions in construction contracts

which purport to indemnify the promisee against liability for damage ... for defects in design furnished by such persons, are against public policy and are void and unenforceable ....
However, Cal.Civil Code § 2782.5, prior to the 1980 amendment, provided that
Nothing contained in Section 2782 shall prevent a party to a construction contract and the owner or other party ... from agreeing with respect to the allocation or limitation as between the parties of any liability for design defects.
The 1980 amendment to section 2782.5 altered the latter part of the provision to read:
... from negotiating and expressly agreeing with respect to the allocation, release, liquidation, exclusion, or limitation as between the parties of any liability (a) for design defects ....
(amendment emphasized).